Daniel Cooper (Bar No. 153576)
Michael Chappell (Bar No. 238138)
LAWYERS FOR CLEAN WATER, INC.
1004-A O'Reilly Avenue
San Francisco, California 94129
Telephone: (415) 440-6520
Facsimile: (415) 440-4155
Email: cleanwater@sfo.com

Brian Gaffney (Bar No. 168778)
LAW OFFICES OF BRIAN GAFFNEY
605 Market Street, Suite 505
San Francisco, California 94105
Telephone: (415) 442-0711
Facsimile: (415) 442-0713
Email: brian@gaffneylegal.com

Amy Chastain (Bar No. 235745)
SAN FRANCISCO BAYKEEPER
785 Market Street, Suite 850
San Francisco, CA 94103
Telephone: (415) 856-0444 x 106
Facsimile: (415) 856-0443
Email: amy@baykeeper.org

Attorneys for Plaintiff
SAN FRANCISCO BAYKEEPER

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAN FRANCISCO BAYKEEPER, a non-profit corporation, <br><br> Plaintiff, <br><br> v. <br><br> CITY OF BURLINGAME, a municipal corporation; VEOLIA WATER NORTH AMERICA OPERATING SERVICES, a limited liability corporation; <br><br> Defendants. | Civil Case No.: <br><br> **COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND CIVIL PENALTIES** <br><br><br> **(Federal Water Pollution Control Act, 33 U.S.C. §§ 1251 *et seq.*)** |

San Francisco Baykeeper by and through its counsel, hereby allege:

**I.    JURISDICTION AND VENUE**

1.    This is a civil suit brought under the citizen suit enforcement provisions of the Federal Water Pollution Control Act, 33 U.S.C. sections 1251 *et seq.* (the "Clean Water Act" or the "CWA"). This Court has subject matter jurisdiction over the parties and subject matter of this action pursuant to Section 505(a)(1) of the CWA, 33 U.S.C. § 1365(a)(1), and 28 U.S.C. section 1331 (an action for declaratory and injunctive relief arising under the Constitution and laws of the United States).

2.    On October 22, 2007, San Francisco Baykeeper ("Baykeeper") issued a 60-day notice letter to the City of Burlingame ("Burlingame") and Veolia Water North America Operating Services, L.L.C. ("Veolia") (collectively "Defendants") regarding Defendants' violations of the Clean Water Act and regarding Baykeeper's intention to file suit against Defendants.  On November 19, 2007, Baykeeper issued a supplemental Notice of Violation and Intent to File Suit to Defendants.  The October 22, 2007 and November 19, 2007 notice letters are hereinafter collectively referred to as "Notice Letters".  Pursuant to 33 U.S.C. section 1365(b)(1)(A) of the CWA, Baykeeper also served the Notice Letters on the Administrator of the United States Environmental Protection Agency ("EPA"), the Administrator of EPA Region IX, the Executive Director of the State Water Resources Control Board ("State Board"), the Executive Officer of the Regional Water Quality Control Board, San Francisco Bay Region ("Regional Board"), and the United States Attorney General.

3.    More than sixty days have passed since the Notice Letters were served on the Defendants and the State and Federal agencies.  Baykeeper is informed and believes, and thereon alleges, that neither the EPA nor the State of California has commenced or is diligently prosecuting an action to redress the violations alleged in this complaint.

4.    Venue is proper in the Northern District of California pursuant to Section 505(c)(1) of the CWA, 33 U.S.C. §1365(c)(1), because the source of the violations is located within this judicial district.

**II.    INTRADISTRICT ASSIGNMENT**

5.    Pursuant to Local Rule 3-2(c), intradistrict assignment of this matter to the San Francisco Division of the Court is appropriate in that the events or omissions which give rise to Baykeeper's

Complaint                                                                                                    2

claims occurred in San Mateo County.  In addition, many of Baykeeper's members reside in the City and County of San Francisco.  No event or omission giving rise to Baykeeper's claims occurred in any other Division of this Court.

**III.    INTRODUCTION**

6.     The violations alleged herein concern discharges of millions of gallons of inadequately treated sewage; hundreds of discharges of raw sewage into area waters, storm drains, and private property; discharges of partially treated sewage from an unpermitted discharge location; violations of effluent limitations; discharges from the collection system to the municipal separate storm sewer system ("MS4"); and a serious failure to properly monitor and report discharges of raw and/or inadequately treated sewage.

7.     The specific CWA violations at issue are: (1) violations of National Pollutant Discharge Elimination System ("NPDES") Permit No. CA0037788, Order No. R2-2002-0027 (hereinafter the "2002 Permit"); (2) violations of NPDES Permit No. CA0037788, Order No. R2-2008-0008 (hereinafter the "2008 Permit"); (3) violations of NPDES Permit No. CAS0029921, Order No. R2-2003-0023, amending Order No. 99-059 (hereinafter the "MS4 Permit"); and (4) discharges of pollutants to waters of the United States without NPDES Permit authorization in violation of CWA section 301(a), 33 U.S.C. § 1311(a).

8.     The 2002 Permit and the 2008 Permit regulate Burlingame's sewage collection system and sewage wastewater treatment plant ("Burlingame's WWTP") and Veolia's management and operation of the Burlingame WWTP.  The MS4 Permit regulates the City of Burlingame's MS4 and Burlingame's municipal storm water discharges (as well as other MS4 systems in San Mateo County).

**IV.    PARTIES**

9.     Plaintiff Baykeeper is a non-profit public benefit corporation whose mission is to protect and enhance the water quality of the San Francisco Bay-Delta Estuary and its tributaries for the benefit of its ecosystems and the surrounding human communities.  Baykeeper accomplishes its mission through education, advocacy, restoration, and enforcement.  Baykeeper's office is located at 785 Market Street, Suite 850, in San Francisco, California.

Complaint                                                                                                    3

1    10.    Baykeeper has members that live in Burlingame who have been affected by the discharge

2   of sewage on Burlingame streets and into area waters.  The discharge of sewage in Burlingame is a

3   threat to human health and the environment, and adversely impacts Baykeeper's members' use and

4   enjoyment of water bodies in and around Burlingame.

5    11.    Baykeeper's members use and enjoy the beaches and waters in and around Burlingame,

6   including, but not limited to, the beach at Coyote Point Recreation Area, Central San Francisco Bay,

7   and the greater San Francisco Bay and its tributaries (these waters are hereinafter referred to as the

8   "Receiving Waters").

9    12.    Baykeeper's members use and enjoy San Francisco Bay area waters for recreational,

10   scientific, aesthetic, educational, conservation and commercial purposes.  Specifically, Baykeeper's

11   members sail, swim, windsurf, picnic, fish, hike and enjoy the wildlife in and around the Receiving

12   Waters.

13    13.    Baykeeper's members use and enjoyment of the Receiving Waters has been and

14   continues to be adversely impacted by ongoing sewer overflows, discharges of raw or inadequately

15   treated wastewater, and discharges of storm water contaminated with sewage to the Receiving Waters

16   used by Baykeeper's members and all tributaries to such waters (given that pollutants discharged to

17   tributaries will flow into the Receiving Waters directly used by Baykeeper's members).  The discharge

18   of pollutants to the Receiving Waters has deleterious effects on those water bodies.  Degradation of

19   water quality and harm to aquatic life in any of the Receiving Waters impairs Baykeeper's members'

20   use and enjoyment of those waters.

21    14.    The interests of Baykeeper's members have been, are being, and will continue to be

22   adversely affected by Defendants' failure to comply with the Clean Water Act.  Baykeeper has no

23   other adequate remedy at law.

24    15.    The City of Burlingame is a municipality incorporated under the laws of the State of

25   California.  The Burlingame Public Works Department ("BPWD"), with offices at 501 Primrose Road,

26   Burlingame, California, is a department of Burlingame.  The BPWD is responsible for operating and

27   maintaining Burlingame's collection system, Burlingame's WWTP, and Burlingame's MS4 system.

28

16.    Veolia Water North America Operating Services is a limited liability corporation with its United States headquarters at 14950 Heathrow Forest Parkway, Ste. 200, Houston, Texas 77032.  In 1972, Burlingame contracted out the operation of the Burlingame WWTP to U.S. Filter, a corporation that was purchased by Veolia in 1999, but continued to operate under the U.S. Filter name until 2004. On February 25, 2004, U.S. Filter officially changed its name to Veolia Water North America Operating Services, LLC.  U.S. Filter's name change to Veolia did not involve the sale or transfer of assets, but was instead merely a corporate name change.  Accordingly, Veolia is liable for all violations as the manager and operator of the Burlingame WWTP that have occurred from October 2002 to the present.

## V.    STATEMENT OF FACTS

### A.    Collection System

17.    Burlingame's sewage collection system is approximately 100 years old.  Burlingame's sewage collection system consists of 160 miles of main sewer line, with 7 pumping stations and over 2,500 manholes that send sewage to the Burlingame WWTP.

### 1.    Sanitary Sewer Overflows

18.    Baykeeper is informed and believes, and thereon alleges, that many of Burlingame's storm sewer overflows ("SSOs") from the collection system are dry weather spills caused by fats, oil and grease ("FOG") in sewer lines, and blockages caused by roots, rocks, and/or debris.

19.    Baykeeper is informed and believes, and thereon alleges, that another major source of SSOs are "wet weather" spills, *i.e.*, spills caused by the system's inadequate capacity to handle peak wet-weather flows during periods of high precipitation.

20.    Baykeeper is informed and believes, and thereon alleges that excessive infiltration and inflow ("I&I") of rainwater and rising groundwater into sewer pipes overwhelms the capacity of the sewer system and causes SSOs during wet weather.

21.    Based on Burlingame's extremely high rate of SSOs, Baykeeper is informed and believes, and thereon alleges, that the Burlingame collection system is deteriorating and that under-funding and deferral of repairs will allow the continued discharge of raw sewage to the Receiving Waters.

22. Burlingame must immediately address the capacity issues in the Burlingame collection system, and repair and/or rehabilitate the old pipes in the collection system in order to facilitate its compliance with the CWA.

23. Burlingame's refusal to immediately implement needed capital improvements adversely impacts Baykeeper's members and the public who use the Receiving Waters.

## 2. Capital Improvement Projects

24. Burlingame has developed a long-term sanitary sewer system capital improvement program ("CIP"), which identifies over $120 million of improvements needed for its sewage collection system, spread out over the next 20 years.

25. Burlingame has completed approximately $28 million of work pursuant to its CIP to date, including completion of a $10 million improvement project at the Burlingame WWTP in November 2006. Baykeeper is informed and believes, and thereon alleges that the completed CIP projects have not reduced the number of SSOs per year, have not alleviated capacity problems in the collection system, and have not reduced the amount of I&I in the collection system.

26. Burlingame's CIP calls for $14 million to implement the improvement projects scheduled for 2008 to 2011, $36 million for projects from 2012 to 2018, and approximately $39 million for projects from 2018 to 2030.

## B. Wastewater Treatment Plant

27. The Burlingame WWTP provides secondary level treatment of wastewater from domestic, commercial and industrial sources within Burlingame, and serves unincorporated areas of San Mateo County and over two-thirds of the Town of Hillsborough. The Burlingame WWTP discharges an average of 5.5 million gallons per day ("MGD") into the North Bayside System Unit ("NBSU") force main, where it is dechlorinated prior to discharge through an outfall approximately 5,300 feet offshore of San Francisco Bay into Lower San Francisco Bay. The WWTP has a 5.5 MGD capacity for dry weather flows and a peak wet weather secondary treatment capacity of 16 MGD. The WWTP is capable of treating 25 MGD of wastewater during the winter season, and it has a disinfection capacity of 20 MGD. Burlingame and Veolia have a service population of approximately 37,000.

Complaint                                                                 6

28.    Burlingame also discharges treated and/or partially treated wastewater from a Nearshore Outfall during peak wet weather conditions.  The Nearshore Outfall is not included in Burlingame's 2002 Permit as a designated point of discharge.  The Regional Board removed the Nearshore Outfall from Burlingame's 2002 Permit and 2008 Permit because all discharges are subject to an initial dilution of at least 10:1, and discharges from the Nearshore Outfall do not provide this level of dilution.  Nearshore Outfall discharges are described by the Regional Board as violations of the 2002 Permit and discharges from the Nearshore Outfall are prohibited in the 2008 Permit (2008 Permit Provisions, VI.C.6), and all discharges must be reported in Burlingame's monthly Self-Monitoring Reports and Annual Report.

**C.    Burlingame's MS4**

29.    The MS4 Permit regulates Burlingame's municipal storm water discharges (as well as other MS4 systems in San Mateo County).  Burlingame's MS4 consists of numerous storm drain inlets that lead to underground storm drain pipes which in turn are directed to San Francisco Bay without treatment.

30.    Burlingame is one of twenty cities and towns in San Mateo County that have joined together to form the San Mateo Countywide Stormwater Pollution Prevention Program ("STOPP"). STOPP submitted a NPDES permit application and was granted a NPDES permit in 1993, which was reissued in 1999 and amended in 2003.  STOPP's NPDES permit regulates discharges into and out of Burlingame's MS4 system.  Specifically, Burlingame is required to prohibit the discharge of non-storm water into the storm drain system.  Further, the MS4 Permit contains Receiving Water Limitations, including prohibitions on discharges that cause deleterious effects on aquatic biota, wildlife, or waterfowl, or which render any of these unfit for human consumption, or cause or contribute to violations of water quality standards.

31.    Raw or partially treated sewage in the form of SSOs is discharged into Burlingame's MS4 system from the Burlingame sewage collection system.  Baykeeper is informed and believes, and thereon alleges, that sewage spills entering the MS4 system from Burlingame's sanitary sewage collection system discharge to the Receiving Waters.  A separate violation of the MS4 Permit occurs each time raw or partially treated sewage is discharged into Burlingame's MS4 system.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### D.     Impacts to the Receiving Waters

32.     San Francisco Bay is an ecologically sensitive water body and a defining feature of Northern California.  San Francisco Bay is an important and heavily used resource, with special aesthetic and recreational significance for people living in the surrounding communities.  Aquatic sports are very popular in the Bay Area.  The San Francisco Bay shoreline has numerous highly valued lagoons with beaches and public access that offer unique recreational opportunities for swimmers, kayakers, and windsurfers.  The large-scale urbanization of the Bay Area makes these recreational and aesthetic uses even more important to the quality of life of Bay Area residents.

33.     Recreational use of San Francisco Bay is increasing as communities create new parks, such as Coyote Point Recreation Area.  However, San Francisco Bay's water quality is impaired and continues to decline.  The Bay's once-abundant and varied fisheries and species have been drastically diminished by pollution.  Much of the wildlife habitat of the Bay has also been degraded.

34.     Coyote Point Recreation Area is a large 670-acre park complex located on a point of land that juts out into lower San Francisco Bay.  Coyote Point Recreation Area is one of the most popular windsurfing areas in Northern California.  In addition to windsurfing, the beach at Coyote Point Recreation Area provides a wide variety of recreational opportunities, including swimming, fishing, boating, kayaking, sailing, and other water sports.

35.     Spills of raw or partially treated sewage and discharges of sewage-contaminated storm water harm San Francisco Bay and pose a serious risk to fisheries, wildlife habitat, and human health. In addition to human waste and bacteria, SSOs contain chemicals that cause cancer or reproductive toxicity.  These chemicals come from solvents, detergents, cleansers, inks, pesticides, paints, pharmaceuticals, and other chemicals used by households and businesses and then discarded to sewage collection systems.  High concentrations of these pollutants are typically found in discharges of raw sewage.

36.     Burlingame's use of the Nearshore Outfall to discharge treated and/or partially treated sewage during high rain events is particularly problematic because the Nearshore Outfall is in very shallow water and receives virtually no dilution.  The discharges contain unacceptably high amounts of

Complaint                                                                                                                          8

human waste, bacteria, and chemicals, because it is not treated properly and it has a higher impact on the environment because the discharge location prevents proper dilution.

37.    The intensive use of San Francisco Bay for commercial and sport fishing, shellfish harvesting, and water-contact recreation increases the likelihood that people will come into direct contact with spilled sewage and the pollutants it contains.  Sewage pollution also affects people who eat fish caught in the Bay.  Toxic chemicals are concentrated in the San Francisco Bay's food web, which means that contaminants absorbed by plankton are magnified in fish and birds farther up the food chain and ultimately transferred to human consumers.  Contamination of fish is particularly damaging to minority and poor people, who eat a greater-than-average amount of fish.

38.    SSOs that do not directly reach San Francisco Bay still pose significant health risks by depositing raw sewage in public streets, public buildings and grounds, and private yards and homes. SSOs contain large quantities of bacteria, viruses, mold spores, and protozoa.  Exposure to raw or partially treated sewage can cause a variety of health problems, including gastroenteritis, respiratory illness, ear, nose, and throat problems, and skin rashes.  Mold spores can establish an ecological niche when they are carried onto a homeowner's property during a sanitary sewer overflow, creating an ongoing health risk from chronic exposure.  Sewage contaminated waters also may provide a breeding ground for mosquitoes.  Residential sewage overflows also diminish property values and impose severe nuisance on local residents.

## VI.    LEGAL BACKGROUND

### A.    The Clean Water Act

39.    Section 301(a) of the CWA, 33 U.S.C. §1311(a), prohibits the discharge of any pollutant into waters of the United States unless the discharge complies with various enumerated sections of the CWA.  Among other things, Section 301(a) prohibits discharges not authorized by, or in violation of, the terms of a NPDES permit issued pursuant to Section 402 of the CWA, 33 U.S.C. § 1342.

40.    Clean Water Act Section 402(p), 33 U.S.C. § 1342(p), establishes a framework for regulating municipal storm water discharges under NPDES permits.  Section 402(p) of the CWA requires a NPDES permit for storm water discharges from a MS4 system to waters of the United States.

Complaint

41.    Section 505(a)(1) of the CWA provides for citizen enforcement actions against any "person," including individuals acting in their official state capacity, for violations of NPDES permit requirements and for unpermitted discharges of pollutants.  33 U.S.C. §§1365(a)(1) and 1362(5).

42.    An action for injunctive relief under the CWA is authorized by 33 U.S.C. section 1365(a).  Violators of the CWA are also subject to an assessment of civil penalties of up to $27,500 per day per violation of the CWA for violations of the CWA occurring prior to March 15, 2004 and $32,500 for all violations occurring on or after March 15, 2004.  Section 309(d), 33 U.S.C. § 1319(d) and 40 C.F.R. §§ 19.1 - 19.4.

43.    The CWA also authorizes the award of reasonable attorneys fees and costs (including witness and consultant fees). 33 U.S.C. § 1365(d).

**B.    2002 Permit Requirements**

44.    NPDES Permit No. CA0037788, Order No. R2-2002-0027, regulated Burlingame's sewage collection system and Burlingame's WWTP from October 22, 2002 through January 30, 2008 when the Regional Board adopted the 2008 Permit.  *See* Regional Board Order No. R2-2002-0027.

45.    The 2002 Permit contains certain absolute prohibitions.  Discharge Prohibition Section A.1 of the 2002 Permit prohibits the discharge of wastewater from any location or in any manner different from that described in the 2002 Permit.  Discharge Prohibition Section A.2 of the 2002 Permit prohibits the discharge of wastewater that does not receive an initial dilution of at least 10:1.  Discharge Prohibition Section A.3 of the 2002 Permit prohibits bypass or overflow of untreated or partially treated wastewater to waters of the State unless specified conditions are met.  Discharge Prohibition Section A.5 of the 2002 Permit prohibits discharges of water, materials, or wastes other than storm water, which are not otherwise authorized by a NPDES permit, to a storm drain system or waters of the State.

46.    The 2002 Permit also contains effluent limitations.  The 2002 Permit imposes effluent limitations on the effluent from the WWTP before going to the NBSU force main, and then from the discharge outfall.  The 2002 Permit requires the sampling and analysis of each of the WWTP effluent discharges for various constituents on a daily, weekly, monthly, and/or semi-annual basis.  Effluent Limitations in the 2002 Permit regulate and limit the discharge of pollutants from the NBSU force

Complaint                                                                                                10

main and the discharge outfall.  *See* 2002 Permit, Effluent Limitations B.1 – 6.  The 2002 Permit requires monitoring in order to ensure that the effluent shall not exceed the proscribed limits, and compliance is intended to be achieved through secondary treatment and, as necessary, pretreatment and source control.  2002 Permit, Effluent Limitations B.6 & Table 4.

47.    In addition to absolute prohibitions, the 2002 Permit contains a variety of substantive and procedural provisions with which dischargers must comply.  Clean Water Act Section 301 and the 2002 Permit require Burlingame and Veolia to monitor and report SSOs and WWTP effluent discharges.  Specifically, the Self-Monitoring Program, listed as Attachment C to the 2002 Permit requires a written report to be submitted to the Regional Board and the Office of Emergency Services ("OES") for every SSO over 1,000 gallons.  For all SSOs under 1,000 gallons, the 2002 Permit requires Burlingame to prepare and retain records of such overflows, with records available for review by the Regional Board upon request.  Further, the 2002 Permit requires Burlingame to include a summary of all SSOs during the year in Burlingame's Self-Monitoring Program Annual Report.

### C.    2008 Permit Requirements

48.    On January 30, 2008, the Regional Board adopted NPDES Permit No. CA0037788, Order No. R2-2008-0008, which now regulates Burlingame's sewage collection system and Burlingame's WWTP.  *See* Regional Board Order No. R2-2008-0008.

49.    On October 3, 2007, the Regional Board distributed a tentative order for reissuance of the 2002 Permit.  The tentative order and the 2008 Permit are almost identical except a few edits that are not at issue in this action.

50.    The 2008 Permit contains certain absolute prohibitions.  Discharge Prohibition Section III.A of the 2008 Permit prohibits the discharge of wastewater from any location or in any manner different from that described in the 2008 Permit.  Discharge Prohibition Section III.B of the 2008 Permit prohibits a dry weather flow that exceeds 5.5 MGD, measured over three consecutive dry weather months.  Discharge Prohibition Section III.C of the 2008 Permit prohibits the discharge of wastewater that does not receive an initial dilution of at least 10:1.  Discharge Prohibition Section III.D of the 2008 Permit prohibits bypass or overflow of untreated or partially treated wastewater to waters of the United States unless specified conditions are met.  Discharge Prohibition Section III.E of the

Complaint                                                                                                     11

2008 Permit prohibits sanitary sewer overflows that result in the discharge of untreated or partially treated wastewater to waters of the United States.

51.    The 2008 Permit also contains effluent limitations.  The 2008 Permit imposes effluent limitations on the effluent from the WWTP before going to the NBSU force main, and then from the discharge outfall.  The 2008 Permit requires the sampling and analysis of each of the WWTP effluent discharges for various constituents on a daily, weekly, monthly, and/or semi-annual basis.  Effluent Limitations in the 2008 Permit regulate and limit the discharge of pollutants from the NBSU force main and the discharge outfall.  *See* 2008 Permit, Effluent Limitations IV. A - F.  The 2008 Permit requires monitoring in order to ensure that the effluent shall not exceed the proscribed limits, and compliance is intended to be achieved through secondary treatment and, as necessary, pretreatment and source control (hereinafter "M&RP").  2008 Permit, Sections IV and VI.

52.    In addition to absolute prohibitions, the 2008 Permit contains a variety of substantive and procedural provisions with which dischargers must comply.  Clean Water Act Section 301 and the 2008 Permit require Burlingame and Veolia to monitor and report SSOs and WWTP effluent discharges.  Specifically, the M&RP, listed as Attachment E to the 2008 Permit, requires Burlingame to report SSOs pursuant to the Statewide General Waste Discharge Requirements for Sanitary Sewer Systems, Order No. 2006-0003.  For all SSOs over 1000 gallons, Burlingame must report to the Online SSO System within 3 business days (Burlingame must also report to County Health Officers, local Director of Environmental Health, regional water boards, or Office of Emergency Services, as required by State law).  For all SSOs under 1,000 gallons, the 2008 Permit requires Burlingame to report the Online SSO Database within 30-days after the end of the month in which the SSO occurs.

D.    **Burlingame's MS4 Permit**

53.    Clean Water Act Section 402(p), 33 U.S.C. § 1342(p), establishes a framework for regulating municipal storm water discharges under NPDES permits.  Section 402(p) of the CWA requires a NPDES permit for storm water discharges from a MS4 system to waters of the United States.  Burlingame's MS4 Permit regulates Burlingame's municipal storm water discharges (as well as other MS4 systems in San Mateo County).  Burlingame's MS4 system consists of numerous storm

1  drain inlets that lead to underground storm drain pipes, which in turn are directed to San Francisco
2  Bay.

3      54.    Burlingame's MS4 Permit contains certain absolute prohibitions.  Discharge Prohibition
4  A.1 of Burlingame's MS4 Permit prohibits the discharge of non-storm water (material other than storm
5  water) into the Burlingame MS4 system.

6                                    **FIRST CAUSE OF ACTION**

7  **Claim Against Burlingame for Discharges of Pollutants Without a NPDES Permit in
   Violation of the Clean Water Act, 33 U.S.C. § 1311(a)**
8

9      55.    Plaintiff realleges, as if set forth fully herein, each and every allegation contained in the
10 preceding paragraphs.

11     56.    Burlingame, as owner and operator of the Burlingame collection system, has been
12 discharging and continues to discharge untreated or partially treated sewage from the Burlingame
13 collection system into the Receiving Waters since at least October 22, 2002.  At no point has
14 Burlingame obtained a permit that authorizes the discharge of untreated or partially treated sewage
15 from the Burlingame sewage collection system to waters of the United States.  Therefore, each and
16 every discharge of untreated or partially treated sewage from Burlingame's collection system is a
17 discharge in violation of Clean Water Act Section 301, which prohibits discharges without a permit.

18     57.    Burlingame has violated the discharge prohibition of CWA Section 301(a) by discharging
19 untreated or partially treated sewage in the form of SSOs without NPDES permit authorization to
20 waters of the United States on at least 198 separate occasions.  Each occasion is a separate CWA
21 violation and these violations are continuing.

22     58.    Plaintiff Baykeeper is informed and believes, and thereon alleges, that Burlingame has
23 been underreporting the number of SSOs that take place from Burlingame's collection system and that
24 Burlingame lacks an adequate monitoring program to detect, report, and address SSOs and their
25 impacts.  Baykeeper is informed and believes, and thereon alleges, that significantly more SSOs will
26 be discovered through this enforcement action.  Each additional SSO will be a separate CWA
27 violation.

28

Complaint                                                                                              13

59.    Burlingame has taken inadequate affirmative steps to eliminate these violations by improving the outdated, and poorly operated and maintained, collection system.  Because Burlingame has failed to undertake appropriate and adequate measures, these violations will continue in the future.

60.    Each day since October 22, 2002, that Burlingame has discharged, and continues to discharge, untreated or partially treated sewage and other pollutants to waters of the United States without a NPDES permit authorizing such discharges is a separate and distinct violation of CWA Section 301(a), 33 U.S.C. § 1311(a).

61.    By committing the acts and omissions alleged above, Burlingame is subject to an assessment of civil penalties pursuant to CWA Sections 309(d) and 505(a), 33 U.S.C. §§ 1319(d) and 1365(a).

62.    An action for injunctive relief under the Clean Water Act is authorized by 33 U.S.C. section 1365(a).  Continuing commission of the acts and omissions alleged above will irreparably harm Plaintiff and the citizens of the State of California, for which harm they have no other plain, speedy, or adequate remedy at law.

WHEREFORE, Plaintiff prays for relief as hereinafter set forth.

## SECOND CAUSE OF ACTION

**Claim Against Burlingame for Discharge of Pollutants in Violation of Permit Conditions, and the Clean Water Act 33 U.S.C. §§ 1311(a)
(2002 Permit Discharge Prohibitions A.1, A.3 and A.5,
2008 Permit Discharge Prohibitions III.A, III.C, and III.E)**

63.    Plaintiff realleges, as if set forth fully herein, each and every allegation contained in the preceding paragraphs.

64.    Discharge Prohibition Section A.1 of the 2002 Permit and Section III.A of the 2008 Permit prohibits the discharge of wastewater from any locations or in any manner different from that described in the 2002 Permit or 2008 Permit.

65.    Discharge Prohibition Section A.3 of the 2002 Permit and Section III.D of the 2008 Permit prohibits bypass or overflow of untreated or partially treated wastewater to waters of the State (2002 Permit) or water of the United States (2008 Permit) except under specified conditions.

Complaint

14

66.     Discharge Prohibition Section A.5 of the 2002 Permit prohibits discharges of water, materials, or wastes other than storm water, which are not otherwise authorized by a NPDES permit, to a storm drain system or waters of the State.  Discharge Prohibition Section III.E of the 2008 Permit prohibits sanitary sewer overflows that result in discharges of untreated or partially treated wastewater to waters of the United States.

67.     Burlingame has been discharging and continues to discharge untreated or partially treated wastewater from the Burlingame collection system into the Receiving Waters since at least October 22, 2002.  Burlingame has violated the 2002 Permit and 2008 Permit, and the discharge prohibition of CWA Section 301(a) by discharging untreated or partially treated sewage in the form of SSOs without NPDES permit authorization to waters of the United States on at least 198 separate occasions.  Each occasion is a separate CWA violation and these violations are continuing.

68.     Baykeeper is informed and believes, and thereon alleges, that Burlingame has been underreporting the number of SSOs that take place from Burlingame's collection system and that Burlingame lacks an adequate monitoring program to detect, report, and address SSOs and their impacts.

69.     Baykeeper is informed and believes, and thereon alleges, that significantly more SSOs will be discovered through this enforcement action.  Each additional SSO will be a separate CWA violation.

70.     Burlingame's discharge of pollutants to waters of the United States in the form of SSOs from the Burlingame collection system violates Clean Water Act Section 301 and 2002 Permit Discharge Prohibitions Sections A.1, A.3 and A.5 and 2008 Permit Discharge Prohibitions Section III.A, III.C, and III.E.

71.     These discharges and violations are ongoing and it is likely that Burlingame will continue to violate these requirements without Court intervention.

72.     2002 Permit Discharge Prohibition Sections A.1, A.3 and A.5 and 2008 Permit Discharge Prohibition Sections III.A, III.C, and III.E constitute effluent limitations within the meaning of CWA Sections 505(a) and (f), 33 U.S.C. § 1365(a), (f).  Accordingly, every instance since October 22, 2002 when Burlingame failed to comply with Permit Discharge Prohibitions Sections A.1, A.3 and A.5 and

Complaint                                                                                                           15

2008 Permit Discharge Prohibition Sections III.A, III.C, and III.E constitutes a day of violation of a CWA effluent limitation and is thus a separate and distinct violation of CWA Section 301(a), 33 U.S.C. § 1311(a).

73.    By committing the acts and omissions alleged above, Burlingame is subject to an assessment of civil penalties pursuant to CWA Sections 309(d) and 505(a), 33 U.S.C. §§ 1319(d) and 1365(a).

74.    An action for injunctive relief under the Clean Water Act is authorized by 33 U.S.C. section 1365(a). Continuing commission of the acts and omissions alleged above will irreparably harm Plaintiff and the citizens of the State of California, for which harm they have no other plain, speedy, or adequate remedy at law.

WHEREFORE, Plaintiff prays for relief as hereinafter set forth.

### THIRD CAUSE OF ACTION

**Claim Against Burlingame and Veolia for Discharge of Pollutants in Violation of Permit Conditions and the Clean Water Act 33 U.S.C. § 1311(a)**
**(2002 Permit Discharge Prohibition A.2,**
**2008 Permit Discharge Prohibition III.C)**

75.    Plaintiff realleges, as if set forth fully herein, each and every allegation contained in the preceding paragraphs.

76.    Discharge Prohibition Section A.2 of the 2002 Permit and Section III.C of the 2008 Permit prohibit the discharge of wastewater that does not receive an initial dilution of at least 10:1.

77.    Since October 22, 2002, Burlingame and Veolia have discharged untreated sewage in violation of the initial dilution requirements of Discharge Prohibition Section A.2 of the 2002 Permit and Section III.C of the 2008 Permit.

78.    These discharges are ongoing and it is likely that Burlingame and Veolia will continue to violate these requirements without Court intervention.

79.    Discharge Prohibition Section A.2 of the 2002 Permit and Section III.C of the 2008 Permit constitutes an effluent limitation within the meaning of CWA Sections 505(a) and (f), 33 U.S.C. § 1365(a), (f). Accordingly, each instance since October 22, 2002 that Burlingame has failed to comply with Permit Discharge Prohibition Section A.2 and Section III.C of the 2008 Permit constitutes

Complaint                                                                                    16

a violation of a CWA effluent limitation and is thus a separate and distinct violation of CWA Section 301(a), 33 U.S.C. § 1311(a).  Likewise, each instance since October 22, 2002 that Veolia has failed to comply with Permit Discharge Prohibition Section A.2 and Section III.C of the 2008 Permit constitutes a violation of a CWA effluent limitation and a separate and distinct violation of CWA Section 301(a), 33 U.S.C. § 1311(a).

80.    By committing the acts and omissions alleged above, Burlingame and Veolia are subject to an assessment of civil penalties pursuant to CWA Sections 309(d) and 505(a), 33 U.S.C. §§ 1319(d) and 1365(a).

81.    An action for injunctive relief under the Clean Water Act is authorized by 33 U.S.C. section 1365(a).  Continuing commission of the acts and omissions alleged above will irreparably harm Plaintiff and the citizens of the State of California, for which harm they have no other plain, speedy, or adequate remedy at law.

WHEREFORE, Plaintiff prays for relief as hereinafter set forth.

### FOURTH CAUSE OF ACTION

**Claim Against Burlingame and Veolia for Discharge From the Nearshore Outfall in Violation of the 2002 Permit, 2008 Permit and Clean Water Act Section 301, 33 U.S.C. § 1311 (2002 Permit Discharge Prohibitions A.1 & A.2, 2008 Permit Discharge Prohibitions III.A & III.D)**

82.    Plaintiff realleges, as if set forth fully herein, each and every allegation contained in the preceding paragraphs.

83.    Clean Water Act Section 301 provides that "the discharge of any pollutant by any person shall be unlawful" unless the discharger is in compliance with the terms of a permit.  33 U.S.C. §1311(a).  Discharge Prohibition Section A.1 of the 2002 Permit and Discharge Prohibition Section III.A of the 2008 Permit prohibits the discharge of treated wastewater at a location or in a manner different from that described in the 2002 Permit and the 2008 Permit.  Discharge Prohibition Section A.2 of the 2002 Permit Section III.D of the 2008 Permit prohibits the discharge of wastewater at any point where it does not receive an initial dilution of at least 10:1.

Complaint

17

84.     Since October 22, 2002, Burlingame and Veolia have been continuously discharging treated and/or partially treated sewage from the Nearshore Outfall directly into the Receiving Waters. The Nearshore Outfall is not included in the City of Burlingame's 2002 or 2008 NPDES permit as a designated point of discharge.  Further, the Regional Board removed the Nearshore Outfall from Burlingame's 2002 Permit because it would have been subject to an initial dilution of at least 10:1. The 2008 Permit prohibits discharges from the Nearshore Outfall and expressly indicates that discharges from the Nearshore Outfall is a violation of the 2008 Permit (2008 Permit Provisions, VI.C.6).

85.     Each of Burlingame's and Veolia's discharges of treated and/or partially treated sewage from the Burlingame WWTP to discharge points other than the NBSU force main have violated 2002 Permit Discharge Prohibition Section A.1 and violate 2008 Permit Discharge Prohibition Section III.A.

86.     Each of Burlingame and Veolia's discharges from the Nearshore Outfall has violated 2002 Permit Discharge Prohibition Section A.2 and 2008 Permit Discharge Prohibition Section III.D.

87.     Burlingame's and Veolia's discharges from the Nearshore Outfall constitute unauthorized discharges of pollutants in violation of CWA section 301(a) as Burlingame and Veolia lack any NPDES permit authorization for these discharges.  33 U.S.C. §1311(a).

88.     These discharges and violations are ongoing and it is likely that Burlingame and Veolia will continue to violate these requirements without Court intervention.

89.     NPDES Permit No. CA0037788 constitutes effluent limitations within the meaning of CWA Sections 505(a) and (f), 33 U.S.C. § 1365(a), (f).  Accordingly, each instance since October 22, 2002 when Burlingame and Veolia failed to comply with 2002 Permit Discharge Prohibition Section A.1 and 2008 Permit Discharge Prohibition Section III.A constitutes a violation of a CWA effluent limitation and is thus a separate and distinct violation of CWA Section 301(a), 33 U.S.C. § 1311(a).

90.     Each instance since October 22, 2002 when Burlingame and Veolia failed to comply with 2002 Permit Discharge Prohibition Section A.2 and 2008 Permit Discharge Prohibition Section III.D constitutes a violation of a CWA effluent limitation and is thus a separate and distinct violation of CWA Section 301(a), 33 U.S.C. § 1311(a).

91.    By committing the acts and omissions alleged above, Burlingame is subject to an assessment of civil penalties pursuant to CWA Sections 309(d) and 505(a), 33 U.S.C. §§ 1319(d) and 1365(a).

92.    An action for injunctive relief under the Clean Water Act is authorized by 33 U.S.C. section 1365(a).  Continuing commission of the acts and omissions alleged above will irreparably harm Plaintiff and the citizens of the State of California, for which harm they have no other plain, speedy, or adequate remedy at law.

WHEREFORE, Plaintiff prays for relief as hereinafter set forth.

## FIFTH CAUSE OF ACTION

**Claim Against Burlingame and Veolia for Violations of Monitoring and Reporting Requirements Imposed by 2002 Permit and 2008 Permit Conditions and Clean Water Act 33 U.S.C. § 1311(a)**

93.    Plaintiff realleges, as if set forth fully herein, each and every allegation contained in the preceding paragraphs.

94.    For every SSO over 1,000 gallons, the 2002 Permit requires a written report to be submitted to the Regional Board and OES.  *See* 2002 Permit's Self-Monitoring Program, Attachment C, Part IV, section F.1.

95.    For all SSOs under 1,000 gallons, the 2002 Permit requires Burlingame to prepare and retain records of such overflows.  *See* 2002 Permit's Self-Monitoring Program, Attachment C, Part IV, section F.2.

96.    The 2002 Permit requires a summary of all SSOs during the year in Burlingame's Self-Monitoring Program Annual Report.  *Ibid.*

97.    The 2008 Permit requires Burlingame to report all SSOs over 1000 gallons via the Regional Board's Online SSO System within 3 business days. *See* 2008 M&RP Attachment E; and SSO WDR Monitoring and Reporting Program.

98.    For all SSOs under 1,000 gallons, the 2008 Permit requires Burlingame to report the Online SSO Database within 30-days after the end of the month in which the SSO occurs.  *Id.*

Complaint

99.    Burlingame and Veolia are not complying with the 2002 Permit and 2008 Permit's SSO reporting requirements.  Burlingame and Veolia have violated Clean Water Act Section 301, as well as the 2002 Permit and the 2008 Permit, by failing to monitor and report SSOs and WWTP effluent discharges and by failing to properly conduct and retain written reports.

100.    Burlingame and Veolia have not submitted written reports to the Regional Board and the OES for all SSOs over 1,000 gallons.

101.    Burlingame and Veolia have not prepared a written report of all SSOs under 1,000 gallons.

102.    Burlingame and Veolia have not retained onsite a written report of each SSO under 1,000 gallons.

103.    Burlingame and Veolia have not included a summary of all SSOs in Burlingame's Self-Monitoring Program Annual Report for each year from 2002 to the present.

104.    Burlingame and Veolia have not taken adequate affirmative steps to eliminate their monitoring and reporting violations.

105.    Burlingame and Veolia's violations are ongoing and will continue in the future. Burlingame and Veolia's violations will continue each day they fail to properly monitor and/or report SSOs.  Burlingame and Veolia's violations will continue each day they fail to properly prepare and retain SSO reports.

106.    The 2002 Permit and the 2008 Permit constitutes effluent limitations within the meaning of CWA Sections 505(a) and (f), 33 U.S.C. § 1365(a), (f).  Accordingly, each day since October 22, 2002, that Burlingame has failed to comply with the 2002 Permit's Self-Monitoring Program and the 2008 Permit's M&RP is a separate and distinct violation of CWA Section 301(a), 33 U.S.C. § 1311(a). Each day since October 22, 2002, that Veolia has failed to comply with the 2002 Permit's Self-Monitoring Program and the 2008 Permit's M&RP is a separate and distinct violation of CWA Section 301(a), 33 U.S.C. § 1311(a).

107.    By committing the acts and omissions alleged above, Burlingame and Veolia are subject to an assessment of civil penalties pursuant to CWA Sections 309(d) and 505(a), 33 U.S.C. §§ 1319(d) and 1365(a).

1
2
3
4

108.    An action for injunctive relief under the Clean Water Act is authorized by 33 U.S.C. section 1365(a).  Continuing commission of the acts and omissions alleged above would irreparably harm Plaintiff and the citizens of the State of California, for which harm they have no other plain, speedy, or adequate remedy at law.

5

WHEREFORE, Plaintiff prays for relief as hereinafter set forth.

6

### SIXTH CAUSE OF ACTION

7
8

**Claim Against Burlingame and Veolia for Exceedance of Effluent Limitations in Violation of the Permit and Clean Water Act 33 U.S.C. § 1311(a)**

9
10

109.    Plaintiff realleges, as if set forth fully herein, each and every allegation contained in the preceding paragraphs.

11
12
13
14
15
16
17

110.    The 2002 Permit and 2008 Permit's Effluent Limitations regulate and limit the discharge of pollutants from the NBSU force main and the discharge outfall.  The 2002 Permit's Effluent Limitations Sections B.1 through B.6 and the 2008 Permit's Effluent Limitations Sections IV.A, C, and D impose effluent limitations on the effluent from the WWTP before going to the NBSU force main.  The 2002 Permit's Effluent Limitations Section B.1 through B.6 and the 2008 Permit's Effluent Limitations Section IV.B, IV.E, and IV.F also imposes effluent limitations on the effluent from the NBSU force main to the discharge outfall.

18
19
20
21
22
23
24

111.    The 2002 Permit's Effluent Limitation B.1 imposes effluent limitations for conventional pollutants, including Total Suspended Solids ("TSS") and Oil and Grease.  *See* Permit, Effluent Limitations Section B.1 & Table 3.  The 2008 Permit's Effluent Limitations Section IV.A imposes effluent limitations for conventional and non-conventional pollutants, including TSS, Oil and Grease, pH, Biochemical Oxygen Demand as described in Attachment E of the M&RP.  Burlingame and Veolia are responsible for meeting the requirements for conventional and non-conventional pollutants for the Burlingame WWTP effluent.

25
26
27
28

112.    The 2002 Permit's Effluent Limitation Section B.6 and 2008 Permit's Effluent Limitation Section IV.F imposes effluent limitations for chronic toxicity, including Cyanide.  Burlingame and Veolia are responsible for meeting the requirements for chronic toxicity for the Burlingame WWTP effluent.

Complaint

21

113.    The 2002 Permit requires monitoring in order to ensure that the effluent shall not exceed the proscribed limits, and compliance is intended to be achieved through secondary treatment and, as necessary, pretreatment and source control.  *See* 2002 Permit, Effluent Limitations Sections B.6 & Table 4.

114.    Burlingame and Veolia have violated and continue to violate the effluent limitations of the 2002 Permit and 2008 Permit.

115.    Burlingame and Veolia's Self-Monitoring Reports establish that since October 22, 2002, Burlingame has violated and continues to violate the 2002 Permit and 2008 Permit's Effluent Limitations by exceeding the daily maximum limit for Cyanide.

116.    Burlingame and Veolia's Self-Monitoring Reports establish that since October 22, 2002, Burlingame has violated and continues to violate the 2002 Permit and 2008 Permit's Effluent Limitations by exceeding the daily maximum limit for Oil and Grease.

117.    Burlingame and Veolia's Self-Monitoring Reports establish that since October 22, 2002, Burlingame has violated and continues to violate the 2002 Permit and 2008 Permit's Effluent Limitations by exceeding the weekly maximum limit for Total Suspended Solids.

118.    Effluent Limitations Sections B.1 through B.6 of the 2002 Permit and Effluent Limitations Section IV constitute effluent limitations within the meaning of CWA Sections 505(a) and (f), 33 U.S.C. § 1365(a), (f).  Accordingly, each day since October 22, 2002 that Burlingame has failed to comply with the effluent limitations in the 2002 Permit and the 2008 Permit is a separate and distinct violation of CWA Section 301(a), 33 U.S.C. § 1311(a).  Each day since October 22, 2002, that Veolia has failed to comply with the effluent limitations in the 2002 Permit and the 2008 Permit is also a separate and distinct violation of CWA Section 301(a), 33 U.S.C. § 1311(a).

119.    By committing the acts and omissions alleged above, Burlingame and Veolia are subject to an assessment of civil penalties pursuant to CWA Sections 309(d) and 505(a), 33 U.S.C. §§ 1319(d) and 1365(a).

120.    An action for injunctive relief under the Clean Water Act is authorized by 33 U.S.C. § 1365(a).  Continuing commission of the acts and omissions alleged above would irreparably harm

Plaintiff and the citizens of the State of California, for which harm they have no other plain, speedy, or adequate remedy at law.

WHEREFORE, Plaintiff prays for relief as hereinafter set forth.

### SEVENTH CAUSE OF ACTION

**Claim Against Burlingame for Non-Storm Water Entering Municipal Separate Storm Sewer System in Violation of MS4 Permit and Clean Water Act 33 U.S.C. § 1311(a)**

121.    Plaintiff realleges, as if set forth fully herein, each and every allegation contained in the preceding paragraphs.

122.    Discharge Prohibition A.1 of the MS4 Permit prohibits the discharge of non-storm water (material other than storm water) into the Burlingame MS4 system.

123.    Burlingame has discharged or allowed the discharge of non-storm water into Burlingame's MS4 system in the form of SSOs from the Burlingame collection system.  SSOs that enter Burlingame's MS4 system are not storm water but rather raw or inadequately treated sewage.

124.    Burlingame has reported to the Regional Board discharges of non-storm water to the Burlingame MS4 system on at least 17 separate occasions.  However, Baykeeper is informed and believes, and thereon alleges, that Burlingame has discharged non-storm water in the form of SSOs to Burlingame's MS4 system on more occasions then reported to the Regional Board.

125.    Burlingame violates the MS4 Permit and Section 301(a) of the CWA every time a SSO from the Burlingame collection system enters Burlingame's MS4 system.  Accordingly, each day since October 22, 2002 that Burlingame has failed to comply with the MS4 Permit is a separate and distinct violation of CWA Section 301(a), 33 U.S.C. § 1311(a).

126.    By committing the acts and omissions alleged above, Burlingame is subject to an assessment of civil penalties pursuant to CWA Sections 309(d) and 505(a), 33 U.S.C. §§ 1319(d) and 1365(a).

127.    An action for injunctive relief under the Clean Water Act is authorized by 33 U.S.C. § 1365(a).  Continuing commission of the acts and omissions alleged above would irreparably harm Plaintiff and the citizens of the State of California, for which harm they have no other plain, speedy, or adequate remedy at law.

Complaint

23

1    WHEREFORE, Plaintiff prays for relief as hereinafter set forth.

2                                    **RELIEF REQUESTED**

3        128.    Wherefore, Baykeeper respectfully requests that this Court grant the following relief:

4        a.    A Court order declaring Burlingame to have violated and to be in violation of

5    Section 301(a) of the CWA, (33 U.S.C. § 1311(a)), for their discharges of untreated and partially

6    treated sewage to waters of the United States, without a permit;

7        b.    A Court order declaring Burlingame to have violated and to be in violation of

8    Section 301(a) of the CWA, (33 U.S.C. § 1311(a)), for discharging pollutants in violation of the 2002

9    Permit and the 2008 Permit;

10       c.    A Court order declaring Burlingame and Veolia to have violated and to be in

11   violation of Section 301(a) of the CWA, (33 U.S.C. § 1311(a) for violating the substantive and

12   procedural requirements of the 2002 Permit, the 2008 Permit, the MS4 Permit and the Clean Water

13   Act;

14       d.    A Court order enjoining Burlingame and Veolia from violating the substantive

15   and procedural requirements of the 2002 Permit, the 2008 Permit, the MS4 Permit and the Clean Water

16   Act;

17       e.    A Court order assessing civil penalties against Burlingame and Veolia of up to

18   $27,500 per day per violation of the CWA for violations of the CWA occurring prior to March 15,

19   2004 and $32,500 for all violations occurring on or after March 15, 2004, for each violation of the

20   CWA pursuant to Sections 309(d) and 505(a), 33 U.S.C. §§ 1319(d) and 1365(a).

21       f.    A Court order awarding Baykeeper its reasonable costs of suit, including attorney,

22   witness, and consultant fees, as provided for by Sections 309(d) and 505(a) of the Clean Water Act, 33

23   U.S.C. §§ 1319(d) and 1365(a);

24   ///

25   ///

26   ///

27   ///

28   ///

Complaint                                                                                          24

1           g.      Award such other relief as this Court may deem appropriate.

2                                LAWYERS FOR CLEAN WATER, INC.

3                                /s/ Daniel Cooper

Dated: February 11, 2008

4                                _____

5                                Daniel Cooper
                            Attorney for Plaintiff
                            San Francisco Baykeeper

6

7

8    Certification of Interested Entities or Persons:

9          Pursuant to Civil L.R. 3-16, the undersigned certifies that as of this date, other than the named

10   parties, there is no such interest to report.

11                               /s/ Daniel Cooper

12

13                               _____
                            Daniel Cooper

14                               Attorney for Plaintiff
                            San Francisco Baykeeper

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Complaint