Daniel Cooper (Bar No. 153576)
E-mail: cleanwater@sfo.com
Michael Chappell (Bar No. 238138)
LAWYERS FOR CLEAN WATER, INC.
1004 O'Reilly Avenue
San Francisco, California 94129
Telephone: (415) 440-6520
Facsimile: (415) 440-4155

Brian Gaffney (Bar No. 168778)
LAW OFFICES OF BRIAN GAFFNEY
605 Market Street, Suite 505
San Francisco, California 94105
Telephone: (415) 442-0711
Facsimile: (415) 442-0713
Email: brian@gaffneylegal.com

Amy Chastain (Bar No. 235745)
SAN FRANCISCO BAYKEEPER
785 Market Street, Suite 850
San Francisco, CA 94103
Telephone: (415) 856-0444 x 106
Facsimile: (415) 856-0443
Email: amy@baykeeper.org

Attorneys for Plaintiff
SAN FRANCISCO BAYKEEPER

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAN FRANCISCO BAYKEEPER, a non-profit corporation,<br><br>Plaintiff,<br>v.<br><br>CITY OF BURLINGAME, a municipal corporation; VEOLIA WATER NORTH AMERICA OPERATING SERVICES, a limited liability corporation;<br><br>Defendants. | Civil Case No.: CV-08-0895 CW<br><br>**JOINT CASE MANAGEMENT STATEMENT**<br><br>Date:    June 17, 2008<br>Time:    2:00 p.m.<br>Location: Oakland Federal Court, Courtroom 2<br>Judge:   Honorable Claudia Wilken |

Plaintiff Santa Monica Baykeeper ("Baykeeper" or "Plaintiff") and defendant City of Burlingame ("Burlingame") in the above-entitled action submit this Joint Case Management Statement. Daniel Cooper, Lawyers for Clean Water, Inc., counsel for Baykeeper, and Kenton Alm, Meyers Nave, LLP[1], counsel for Burlingame met telephonically on June 11, 2008, and discussed the matters set forth in the Court's Standing Order For All Judges Of The Northern District of California. Defendant Veolia Water North America Operating Services, L.L.C. ("Veolia") has retained Skip Spaulding of Farella Braun & Martell, LLP, but Veolia was not a participant in the telephonic early meeting of counsel. Veolia did not participate because the Parties have been engaged to this point in settlement negotiations, and Veolia has not been served with the complaint, nor has it agreed to accept service as of today's date. Accordingly, the Parties did not request that Veolia participate in the early meeting. Based on the early meeting conducted between Plaintiff and Burlingame (collectively referred to hereinafter as the "Parties"), the Parties report to the Court as follows:

**1.   JURISDICTION AND SERVICE**

Joint Statement:

This is a civil action brought under the citizen suit enforcement provisions of the Federal Water Pollution Control Act ("Clean Water Act" or "Act"), 33 U.S.C. § 1365. This Court has jurisdiction over the subject matter of this action pursuant to Section 505(a) of the Act, 33 U.S.C. § 1365(a) (citizen suits authorized by the Clean Water Act), 28 U.S.C. § 1331 (Federal Courts have jurisdiction over actions arising under the laws of the United States), and 28 U.S.C. § 1367(a) (Federal Courts have jurisdiction over claims that arise out of the same case or controversy as a claim over which the Federal Courts have original jurisdiction). The Parties have been engaged in settlement negotiations, including four in-person meetings as well as numerous telephonic conferences. The Parties believe the case is close to resolution. Plaintiffs deferred service of the complaint to allow settlement negotiations to proceed.

---

[1] The City accepted service on June 11, 2008 and has not filed its Answer yet as such, the contact information for its counsel has not been provided. That information is as follows: Kenton L. Alm, Meyers, Nave, Riback, Silver & Wilson, Bar No.: 59017, 555 12th Street, Suite 1500, Oakland, CA 94607, kalm@meyersnave.com.

1  Counsel for Burlingame accepted service of the complaint on 11 June 2008.  Plaintiffs are in the process
2  of perfecting service of the complaint on Veolia.

3  <u>Defendant's Statement</u>:  Defendant Burlingame agrees it accepted service on 11 June 2008 and
4  thereby further agrees that the Court has jurisdiction based on the allegations in the Complaint.
5  Burlingame further accepts Plaintiff's statement that there have been ongoing settlement negotiations.
6  Burlingame seeks to amplify on that statement.  Burlingame was served with the 60-day notice before
7  the beginning of the New Year and immediately thereafter contacted Baykeeper to engage it in
8  settlement discussions.  Numerous settlement discussions have occurred since that date and the City has
9  provided a substantial amount of information to Baykeeper, engaged experts to coordinate with
10  Baykeeper's experts and spent substantial effort evaluating specific terms of a proposed Consent Decree.
11  Many issues have been resolved, however several difficult technical issues remain and are subject of
12  upcoming discussions.  As defendant Burlingame had not been formally served prior to June 11th,
13  Burlingame was not yet subject to the Court's jurisdiction and had not calendared the dates for the Case
14  Management Statement or for the Case Management hearing.  Burlingame seeks to continue with a
15  productive settlement process and therefore out of deference to Plaintiff is participating in this Joint
16  Case Management Statement.  However, given the shortness of the time between service and the
17  hearing, Burlingame asks the Court to treat Defendant's statements herein as merely a good faith attempt
18  to provide preliminary information.  Burlingame seeks the opportunity in the future, if this matter does
19  not settle, to amplify on the information provided in this case management statement once it has had
20  time to clarify its litigation strategy.  Alternatively, Burlingame would seek that the Case Management
21  Conference be continued to a future date to allow additional time for the potential of early settlement.

22  **2.    CHRONOLOGY OF FACTS AND PRINCIPAL FACTUAL ISSUES IN DISPUTE**
23  <u>Plaintiff's Chronology of Facts</u>:
24  For decades, Burlingame has owned and/or operated a publicly owned treatment works and
25  sewage collection system that collects, treats, and discharges wastewater generated by residential,
26  commercial, and industrial sources.  Starting in 1999, Veolia entered into a contract to operate the
27  Burlingame sewage collection system and publicly-owned treatment works.  The collection system
28  consists of 160 miles of tributary main sewer line, 7 pumping stations and over 2,500 manholes that

send sewage to the Burlingame Wastewater Treatment Plant ("WWTP"). Since 2002, Burlingame's sewage collection system and Burlingame's WWTP have been regulated under a National Pollutant Discharge Elimination System ("NPDES") Permit issued by the California Regional Water Quality Control Board, San Francisco Bay Region, ("Regional Board").[2] From October 22, 2002 to the present, Burlingame and Veolia have committed numerous violations of the effluent discharge limitations as well as the monitoring, reporting and notification requirements of the NPDES Permit. Based upon call out reports generated by Burlingame or Veolia personnel, Burlingame and Veolia have also discharged sewer system overflows ("SSO") without NPDES permit authorization to waters of the United States on at least 198 separate occasions from October 22, 2002 to the present in violation of section 301(a) of the Clean Water Act, 33 U.S.C. § 1311(a). Burlingame's and Veolia's unpermitted SSO discharges and NPDES Permit violations are ongoing.

Burlingame also discharges treated and/or partially treated wastewater from a Nearshore Outfall. The Nearshore Outfall is not included in Burlingame's NPDES Permit as a designated point of discharge. Since October 22, 2002, Burlingame and Veolia have been continuously discharging treated and/or partially treated sewage from the Nearshore Outfall directly into the waters of the United States. These discharges from the Nearshore Outfall are also ongoing.

Additionally, Burlingame owns and/or operates a municipal sanitary sewer system ("MS4") in conjunction with the San Mateo Countywide Stormwater Pollution Prevention Program ("STOPP"). In 1993, STOPP applied for and obtained coverage under NPDES permit No. CA0029912, Order No. R2-2003-0022, as amended by Order No. R2-2003-0022 (the "MS4 Permit"), regulating discharges into and out of Burlingame's municipal MS4. From October 22, 2002 to the filing of this action, Burlingame has reported to the Regional Board unpermitted discharges of non-storm water in the form of sewage spills to the Burlingame MS4 on at least 17 separate occasions. These unpermitted discharges and MS4 Permit violations are also ongoing.

---

[2] NPDES Permit No. CA0037788, Order No. R2-2002-0027 ("2002 Permit"), regulated Burlingame's sewage collection system and Burlingame's WWTP from October 22, 2002 through January 30, 2008; since January 31, 2008, Burlingame's collection system and WWTP have been regulated under NPDES Permit No. CA0037788, Order No. R2-2008-0008 ("2008 Permit").

On October 22, 2007, Baykeeper provided Burlingame and Veolia (collectively "Defendants"), the Administrator and the Regional Administrator for Region IX of the United States Environmental Protection Agency ("EPA"), and the Executive Director of the California State Water Resources Control Board ("State Board") with a Notice of Violation and Intent to File Suit under Section 505(a) of the CWA, 33 U.S.C. § 1365(a)(1) and (f). The 60-Day Notice alleged, and Plaintiffs contend, that Defendants have violated and continue to violate the Clean Water Act, along with the terms and conditions of the NPDES Permit and Burlingame's MS4 Permit. On November 19, 2007, Baykeeper issued a supplemental Notice of Violation and Intent to File Suit to Defendants.

On February 11, 2008, Plaintiff filed its Complaint in the United States District Court for the Northern District of California against Defendants (Case No. CV-08-0895 CW). Since that time, the Parties have been engaged in settlement negotiations and have made significant progress toward settlement.

Plaintiff's Statement re: Factual Issues in Dispute:

The primary factual issues in dispute involve 1) the number of SSOs and/or volume of SSOs that Burlingame and Veolia have discharged in violation of the NPDES permit; 2) the number and volume of discharges of treated wastewater from the nearshore outfall in violation of the NPDES permit; 3) the number of violations of the effluent discharge limitations established in the NPDES permit; 4) the number of violations of the monitoring, reporting and notification requirements established in the NPDES permits; and 5) the number of violations of the terms and conditions established in Burlingame's MS4 Permit. Other factual issues will likely involve the appropriate injunctive relief and amount of penalties to be paid by Defendants for proven violations. The Clean Water Act and implementing regulations set out criteria for determining appropriate penalties. *See* 33 U.S.C. § 1319(d). The factors include seriousness of the violations, economic benefit to the violator, history of violations, efforts to comply, and ability to pay. Injunctive relief will revolve around Defendants' elimination of unlawful discharges, compliance with the terms of the NPDES permit, and the restoration of waters of the United States damaged by Defendants' sewage contaminated discharges.

Defendants' Chronology of Facts:

Burlingame has owned and been responsible for operation of the public treatment works and

sewage collection system serving the constituents within its jurisdictional boundaries for decades. City staff has historically provided for maintenance and operation of the sewage collection system and for the period addressed in the Baykeeper Complaint, provided for operation of WWTP through a contract with Veolia, a private corporation. The collection system of the City includes approximately 100 miles of public sewer mains, pump stations and thousands of manholes. In addition there exists hundreds of miles of lateral sewers connecting private properties to the public mains. All of the collection system directs the flow to the WWTP. Burlingame's operation of both the collection system and the WWTP are pursuant to the permits as listed in footnote 1 and Chronology of Facts. In addition to the flow of sewage which emanates from the City limits of Burlingame, sewage from the City of Hillsborough and from an unincorporated area of San Mateo County flow through the Burlingame collection system to the WWTP. Those separate satellite collection systems comprise approximately 70 additional miles of sewer mains and Burlingame conveys and treats these additional flows pursuant to contracts.

     Burlingame's WWTP is a well-run facility which has an exemplary record of compliance over the last several years. Burlingame has also instituted a substantial capital improvement and maintenance program for its collection system over the last 8 to 10 years. Major improvements have been made and the current capital plan envisions total replacement of the entire collection system within approximately the next 20 years. Notwithstanding these efforts, Burlingame, along with all other municipalities operating similarly-sized sewage collection systems, has experienced periodic overflows from the collection system. Burlingame has reported these overflows pursuant to the regulations which were in place at the time of the overflows. In addition, Burlingame has historically voluntarily taken responsibility for maintenance of a portion of the lateral sewers, which are the pipes connecting private structures to the public sewer main. This practice is not followed by many severing entities. The portion which Burlingame provides maintenance is generally referred to as the "lower lateral" or the portion of the lateral which is generally in the public right of way. Due to Burlingame's voluntary maintenance of the lower lateral it has reported all sewage spills which occur from the lower laterals. Many municipalities do not report such spills. This discrepancy may allow for a misinterpretation that Burlingame's system is functioning at a lesser level than other similar systems.

The State Water Quality Control Board adopted a statewide WDR No. 2006-0003 on May 2, 2006 (WDR). This general order sets forth new rules for a statewide program for sanitary sewer collection system operation, maintenance and replacement. The WDR initiated a program requiring all entities operating a sanitary sewer collection system of one mile or greater to comply with a program to develop a Sewer System Master Plan ("SSMP"), provide upgraded electronic reporting of all sewer system spills, undertake the upgraded maintenance, repair and replacement efforts. The SSMP is the roadmap document for these efforts. The City of Burlingame has acknowledged its responsibility under the program, has adopted an SSMP and is proceeding pursuant to the dates set forth for in the WDR.

Discharge from Burlingame's WWTP is generally directed to a joint outfall used by itself and several surrounding public agencies. Historically, Burlingame also was authorized to use a second point of discharge known as the "Near Shore Outfall." This was only used during heavy rain events where the joint outfall system has insufficient capacity to handle the entirety of Burlingame's flow. Occasional use of the Near Shore Outfall is no longer authorized Burlingame's NDPES Permit. However, once or twice a year during heavy rain events, the City of Burlingame is forced to use the Near Shore Outfall to discharge the fully treated effluent which cannot be discharged through the joint outfall system. Improvements have recently been made to the WWTP and additional improvements are contemplated, which will minimize the use of the Near Shore Outfall. The 2008 NPDES Permit requires the City of Burlingame to build a detention basin to minimize the use of the Near Shore Outfall and predesign for that facility is underway.

The City of Burlingame also operates municipal storm sewers pursuant to the MS4 Permit obtained in conjunction with STOPP. As indicated in Plaintiff's statement, the City of Burlingame's requirements for its storm sewer operations and regulated by the MS4 Permit. The City of Burlingame has been operating its storm water collection system in general compliance with the requirements of the MS4 Permit.

The City of Burlingame acknowledges that Baykeeper filed a 60-day notice and provided Burlingame with a copy of that notice in October of 2007. The City of Burlingame further acknowledges that Plaintiffs filed a Complaint in February of 2008 and that substantial discussions

1 have been held, with significant progress made, relating to potential settlement of the issues raised in the 60-day notice and the Complaint. The City of Burlingame excepted service of the Complaint June 11, 2008.

Defendants' Statement re Factual Issues in Dispute:

The City of Burlingame agrees with the factual issues in dispute set forth by Plaintiff as augmented herein. In addition to the factual issues listed, the City of Burlingame contends it is not discharging pollutants from points sources without a permit in the manner alleged by Baykeeper. Since October 2002 to the date of the filing of this action, Burlingame has operated the WWTP and collection system in accordance with the operative regulatory provisions in that period and that sanitary sewer overflows have been reported and remediated in accordance with the Clean Water Act, and applicable State and Regional Board standards. Further, Burlingame contends there is no basis to establish injury in fact to members of Baykeeper, which alleged injury is caused by Burlingame's operation and maintenance of the sanitary sewer system and WWTP. Further, many of the alleged sewer system overflow violations were deminimus in nature and create disputed facts as to whether each or any of them reached waters of the United States so as to constitute a violation under the Clean Water Act.

## 3. LEGAL ISSUES

Plaintiff's Statutory Background: The Clean Water Act is a strict liability statute. Section 301(a) of the Clean Water Act, 33 U.S.C. § 1311(a), prohibits the discharge of any pollutant into waters of the United States unless the discharge complies with various sections of the Act. Among other things, Section 301(a) prohibits discharges not authorized by, or in violation of, the terms of a NPDES permit issued pursuant to Section 402 of the CWA, 33 U.S.C. § 1342. A violation of a NPDES permit is a violation of the Act. Clean Water Act Section 402(p), 33 U.S.C. § 1342(p), establishes a framework for regulating municipal storm water discharges under NPDES permits. Section 402(p) of the CWA requires a NPDES permit for storm water discharges from a MS4 system to waters of the United States. Section 505(a)(1) of the CWA provides for citizen enforcement actions against any "person," including individuals acting in their official state capacity, for violations of NPDES permit requirements and for unpermitted discharges of pollutants. 33 U.S.C. §§1365(a)(1) and 1362(5).

<u>Primary Legal Issues</u>   The following major issues are in dispute:

1) Whether the alleged SSOs violate the terms of Burlingame's NPDES permits or the MS4 Permit;

2) Whether the discharges from the Nearshore Outfall are violations of the NPDES permit;

3) Whether the alleged exceedances of NPDES permit effluent limitations violate the terms of Burlingame's NPDES permit and the Clean Water Act;

4) Whether Defendants complied with the monitoring, reporting, and notification requirements of the NPDES permit;

5) Whether Burlingame and/or Veolia are liable for SSOs from privately owned sewer lines ("Private Laterals") whether or not they enter Burlingame's storm sewer system and/or reach waters of the United States;

6) Whether the alleged violations of NPDES permit terms and conditions, MS4 Permit terms and conditions, and the unpermitted SSOs are ongoing;

7) The propriety and amounts to be awarded for Plaintiff's attorneys', consultants', experts' fees and litigation costs.

<u>Defendants' Statutory Background</u>:

Defendant Burlingame agrees with the statutory background stated by Plaintiffs. Plaintiffs' application of the Clean Water Act to both sewage collection and disposal, as well as stormwater, is not disputed. The application of the statute to the circumstances set forth in the Complaint does provide a basis for substantial disputes on the major legal issues listed by Plaintiff.

<u>Primary Legal Issues</u>:

Defendant Burlingame agrees at present that the primary legal issues stated by Plaintiff in the Complaint are pivotal to the legal disposition of this matter. In addition, Burlingame contends that Baykeeper lacks standing to bring the action. Any alleged injury is conjectural and hypothetical, non-concrete and particularized and will not be addressed by a favorable decision by this Court. In addition, the City contends that it is not subject to mandatory civil penalties under this action and that there may be little or no basis for injunctive relief. To the extent that sanitary sewer overflows have occurred, such overflows were deminimus and not in violation of federal or state law, and do not

warrant civil penalties or any other relief sought by Baykeeper.

**4.   MOTIONS**

<u>Plaintiff's Statement</u>:  Plaintiff has not filed any prior or pending motions.  Plaintiff anticipates filing a motion for partial summary judgment to establish liability in the next three/four months.  Once liability is established, Plaintiff will conduct a bench trial to establish appropriate injunctive relief, penalties, and attorneys' fees and costs.

<u>Defendants' Statement</u>:

Defendant has been formerly served a day prior to the drafting of this statement and therefore Defendant's litigation strategy has not been fully developed.  Defendant's familiarity with this matter is based on the substantial attempts to resolve it through settlement, therefore additional consideration will be required to determine what motions may be brought if settlement does not occur.  Burlingame anticipates filing a motion for partial summary judgment to eliminate liability for some or all of the alleged sewer system overflows and MS4 violations.  Those motions will be filed in the next four to five months.  Other motions may be brought once Defendant City of Burlingame has further developed its litigation strategy in the event the matter does not resolve itself through settlement .

**5.   AMENDMENT OF PLEADINGS**

<u>Plaintiff's Statement</u>:  Plaintiff may amend the pleadings to add or modify claims or parties depending upon information obtained during discovery.  Plaintiffs are likely to dismiss Veolia from this action if the case is resolved with Burlingame committing to compliance with its NPDES permit.

<u>Defendants' Statement</u>:

The City of Burlingame is not seeking to bring in other parties and has not filed its initial response.  Therefore no amendment of the pleadings is currently anticipated.

**6.   EVIDENCE PRESERVATION**

The Parties have taken steps to ensure that evidence relating to issues relevant in this action have been preserved.  The Parties shall preserve relevant emails, voice mails, and other recorded material.

**7.   DISCLOSURES**

<u>Plaintiff's Statement</u>:  Plaintiffs propose that the Parties make the Fed. R. Civ. P. 26(a)(1) concurrent with the June 17, 2008 case management conference.

    Defendants' Statement:

    Defendant Burlingame objects to Fed. R. Civ. P. 26(a)(1) disclosure on June 17, 2008 due to the recent date of service. However, Defendant City of Burlingame will make reasonable efforts to provide preliminary disclosure information on that date.

    Plaintiffs have previously had the opportunity to review through a public records act request all documents pertinent to this matter. In addition, since the service of the 60-day letter, there has been a substantial informal production of documentation, reports and other information. Burlingame has attempted to provide all documentation which is pertinent to and/or requested by Plaintiff during the settlement negotiations. As a practical matter, a majority of the disclosure obligation has informally already been met; however, formal documentation of those disclosures and a disclosure of any required additional information will require some effort. Defendant Burlingame seeks relief to disclosure date 20 or 30 days after the Case Management Conference Hearing.

**8. DISCOVERY**

    Plaintiff's Statement: Neither Party has propounded discovery at this time nor have agreements been made concerning the identification or storage of electronic information. In conducting discovery, Plaintiff will require discovery on liability, injunctive relief, and penalties. The Parties' proposed schedule is included in section 17 below.

    Defendants' Statement:

    Defendants have not fully developed a discovery plan; however, Defendants will require discovery on issues relating to Baykeeper membership, standing and injury. Burlingame may require additional discovery which is not anticipated at this time. Defendant agrees to the proposed schedule set forth in Section 17 below.

**9. CLASS ACTIONS**

    Not Applicable.

**10. RELATED CASES**

    Joint Statement: The Parties are not aware of any related cases or proceedings currently pending before another Judge of this Court or before another Court or administrative body. Plaintiffs have filed notice letters providing 60 days notice of intent to sue as provided under the Clean Water

Act to the City of Hillsborough and the City of Burlingame Hills. Plaintiff will file a Notice of Related Case when these actions are filed.

**11.  RELIEF**

<u>Plaintiff's Statement</u>: Plaintiff requests that the Court enter judgment declaring that Defendants have violated and are in violation of the requirements of Section 301(a) of the Clean Water Act, 33 U.S.C. § 1311(a); issue an order enjoining Burlingame and Veolia from discharging pollutants from the sewage collection system and WWTP into area surface waters; order Burlingame to take appropriate actions to restore the quality of surface waters impaired by its activities, (3) order Defendants to pay civil penalties of $32,500 per day per violation, or such other amount as the Court may deem appropriate, and (4) award Plaintiff's attorneys' fees and costs.

<u>Defendants' Statement</u>:

The City of Burlingame does not contemplate filing a counter-claim. Burlingame will request that the Court not enter a judgment, an injunction, or an order to pay civil penalties or attorneys fees.

**12.  SETTLEMENT AND ADR**

The Parties have conducted informal settlement discussions but have not reached an agreement. The Parties negotiations have been substantive and have brought about significant progress. The Parties will meet again shortly after the case management conference on June 17, 2008, and believe the case can be resolved within 45 days. The Parties request Alternative Dispute Resolution with a Magistrate Judge pursuant to Civil L.R. 3-5.

**13.  CONSENT TO MAGISTRATE JUDGE FOR ALL PURPOSES**

The Parties do not consent to the designation of a Magistrate Judge to conduct all proceedings.

**14.  OTHER REFERENCES**

The Parties do not believe that this case is suitable for reference to binding arbitration, a special master, or the Judicial Panel on Multidistrict Litigation.

**15.  NARROWING OF ISSUES**

<u>Plaintiff's Statement</u>: Plaintiff believes that the question of Defendants' liability for the claims alleged in its Complaint will likely be resolved via a motion for partial summary judgment, leaving the appropriate amount of civil penalties, injunctive relief, and attorneys' fees and costs for resolution at trial.

1  Defendants' Statement:

2  Defendant Burlingame agrees that both motions for partial summary judgment may narrow the
3  issues.

4  **16.  EXPEDITED SCHEDULE**

5  The Parties do not believe that this is the type of case that can be handled on an expedited
6  schedule.  See schedule in section 17.

7  **17.  SCHEDULING**

8  The Parties propose the following schedule:

| | |
|---|---|
| Fact discovery cut off: | October 31, 2008 |
| Designation of Experts: | November 14, 2008 |
| Expert reports due: | December 12, 2008 |
| Rebuttal reports due: | January 23, 2009 |
| Expert discovery cut off: | March 27, 2009 |
| Last day for hearing dispositive motions: | June 9, 2009 |
| Final Pre-trial conference date: | October 27, 2009 |
| Proposed trial date: | November 9, 2009 (4 Days) |

17  **18.  TRIAL**

18  Plaintiff's Statement:

19  Based on the assumption that most or all issues relating to liability will be resolved via motions
20  for partial summary judgment, the Parties estimate that trial will require 4 Court days, and will require
21  2-3 witnesses.  The Parties request a bench trial.

22  Defendants' Statement:

23  Defendant Burlingame agrees that the matter may be resolved through a medium length bench
24  trial, however it suggests the length of trial may exceed four days.  It may be better estimate the length
25  once its litigation strategy has been fully developed.  Defendant Burlingame may require one or more
26  additional days beyond 4 days to present its case.

27  ///

28

**19.    DISCLOSURE OF NON-PARTY INTERESTED ENTITIES OR PERSONS**

<u>Plaintiff's Statement</u>:  Plaintiff has filed the "Certification of Interested Entities or Persons" required by Civil Local Rule 3-16.  Other than the named party, San Francisco Baykeeper, Plaintiff has no other interest to report.

<u>Defendants' Statement</u>:

Burlingame is a public entity and is not required to make a disclosure pursuant to Civil Local Rule 3-16.

Dated:  June 12, 2008            LAWYERS FOR CLEAN WATER, INC.

                                 /s/ Daniel Cooper
                         By:     _____
                                 Daniel Cooper
                                 Attorneys for Plaintiffs
                                 San Francisco Baykeeper

Dated:  June 12, 2008            MEYERS NAVE RIBACK SILVER & WILSON

                                 /s/ Kenton L. Alm
                         By:     _____
                                 Kenton L. Alm
                                 Attorneys for Defendants
                                 City of Burlingame and Veolia North America
                                 Operating Services, LLC

I hereby attest that I have on file all holograph signatures for any signatures indicated by a "conformed" signature (/S/) within this efiled document.

Dated:  June 12, 2008            LAWYERS FOR CLEAN WATER, INC.

                                 /s/ Daniel Cooper
                         By:     _____
                                 Daniel Cooper
                                 Attorneys for Plaintiffs
                                 San Francisco Baykeeper

1108076.1