Daniel Cooper (Bar No. 153576)
Michael Chappell (Bar No. 238138)
LAWYERS FOR CLEAN WATER, INC.
1004-A O'Reilly Avenue
San Francisco, California 94129
Telephone: (415) 440-6520
Facsimile: (415) 440-4155
Email: cleanwater@sfo.com

Brian Gaffney (Bar No. 168778)
LAW OFFICES OF BRIAN GAFFNEY
605 Market Street, Suite 505
San Francisco, California 94105
Telephone: (415) 442-0711
Facsimile: (415) 442-0713
Email: brian@gaffneylegal.com

Amy Chastain (Bar No. 235745)
SAN FRANCISCO BAYKEEPER
785 Market Street, Suite 850
San Francisco, CA 94103
Telephone: (415) 856-0444 x 106
Facsimile: (415) 856-0443
Email: amy@baykeeper.org

Attorneys for Plaintiff
SAN FRANCISCO BAYKEEPER

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAN FRANCISCO BAYKEEPER, a non-profit corporation, | Civil Case No.: CV-08-0895 CW |
| Plaintiff, | **CONSENT DECREE** |
| v. | |
| CITY OF BURLINGAME, a municipal corporation; VEOLIA WATER NORTH AMERICA OPERATING SERVICES, a limited liability corporation; | |
| Defendants. | |

## CONSENT DECREE

The following Consent Decree is entered into by and between Plaintiff San Francisco Baykeeper ("Plaintiff" or "Baykeeper"), and Defendant City of Burlingame ("City" or "Burlingame"). The entities entering into this Consent Decree are each referred to herein as "Settling Party" and collectively as "Settling Parties."

**WHEREAS**, Baykeeper is a non-profit public benefit corporation dedicated to, among other things, the protection and enhancement of the water quality of the San Francisco Bay-Delta Estuary;

**WHEREAS**, the City of Burlingame is a municipal corporation and political subdivision of the State of California;

**WHEREAS**, Burlingame owns and/or operates a publicly-owned treatment works and a collection system that collects, treats, and discharges wastewater generated by residential, commercial, and industrial sources, pursuant to California Regional Water Quality Control Board, San Francisco Bay Region, ("Regional Board"), Order No. R2-2008-0008, and National Pollutant Discharge Elimination System ("NPDES") Permit No. CA0037788; Prior to 2008, Burlingame was regulated by Order No. R2-2002-0027;

**WHEREAS**, Burlingame is one of twenty cities and towns in San Mateo County that have joined together to form the San Mateo Countywide Stormwater Pollution Prevention Program ("STOPP"). STOPP's NPDES permit No. CA0029912, Order No. R2-2003-0022, as amended by Order No. R2-2003-0022, regulates discharges into and out of Burlingame's municipal separate storm sewer system;

**WHEREAS**, Veolia Water North America Operating Services, LLC has entered into a contract to operate the Burlingame publicly-owned treatment works and, in October 2007, assigned that contract to Veolia West Operating Services, Inc., which currently operates the plant (these two Veolia entities will be collectively referred to herein as "Veolia");

**WHEREAS**, on October 22, 2007, Baykeeper provided Burlingame, Veolia Water North America Operating Services, LLC, the Administrator and the Regional Administrator for Region IX of the United States Environmental Protection Agency ("EPA"), and the Executive Director of the California State Water Resources Control Board ("State Board") with a Notice of Violation and

Intent to File Suit under § 505(a) of the Federal Water Pollution Control Act ("Clean Water Act" or "CWA"), 33 U.S.C. § 1365(a)(l) and (t).  The 60-Day Notice alleged, and Baykeeper contends, that Burlingame and Veolia Water North America Operating Services, LLC violated and continue to violate the Clean Water Act, along with the terms and conditions of the 2002 Permit and the 2008 Permit and Burlingame's MS4 Permit;

**WHEREAS**, on November 19, 2007, Baykeeper issued a supplemental Notice of Violation and Intent to File Suit letter to Burlingame and Veolia Water North America Operating Services, LLC.  The October 22, 2007 and November 19, 2007 notice letters are hereinafter collectively referred to as "Notice Letters";

**WHEREAS**, on February 11, 2008, Plaintiff filed its Complaint in the United States District Court for the Northern District of California ("District Court") against Burlingame and Veolia Water North America Operating Services, LLC (Case No. CV-08-0895 CW);

**WHEREAS**, on July 11, 2008, Baykeeper issued a supplemental Notice of Violation and Intent to File Suit letter to Veolia West Operating Services, Inc.;

**WHEREAS**, as part of the settlement of the claims between Baykeeper and Burlingame, Baykeeper has agreed to dismiss with prejudice, all claims against Veolia, and Veolia is not being included as a party to this Consent Decree;

**WHEREAS**, Baykeeper intended its Complaint and intends this settlement to facilitate the prevention of sanitary sewer overflows, wastewater treatment plant overflows, and wastewater treatment plant effluent violations that have historically occurred and are occurring from the Burlingame collection system and wastewater treatment plant and to facilitate the prevention of sewage discharges to the Burlingame MS4;

**WHEREAS**, Burlingame denies Baykeeper's allegations that it has violated the Clean Water Act and/or any of the permits as alleged in the Complaint and denies it has liability to Baykeeper or other citizen groups; the Settling Parties agree that nothing in the Consent Decree shall be construed as an admission by Burlingame or Veolia, and does not intend to imply, any admission as to any fact, finding, issue of law, or violation of law, nor shall compliance with this Consent Decree be construed as an admission by Burlingame of any fact, finding, conclusion, issue of law or violation of law;

**WHEREAS**, this Consent Decree shall be submitted to the United States Department of Justice ("DOJ") and the EPA for the statutory review period pursuant to 33 U.S.C. § 1365(c) and shall thereafter be submitted to the District Court for approval;

**WHEREAS**, at the time the Consent Decree has been submitted for approval to District Court, Baykeeper shall request a dismissal of the Complaint with prejudice as to both the City and Veolia and the Settling Parties shall stipulate that the District Court should retain jurisdiction for the enforcement of this Consent Decree as provided herein;

**WHEREAS**, Baykeeper and the City, through their authorized representatives and without either adjudication of the Complaint's claims or admission by Burlingame of any alleged violation or other wrongdoing, have chosen to resolve this action through settlement and avoid the costs and uncertainties of further litigation;

**NOW, THEREFORE**, for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Settling Parties each hereby agree as follows:

## I.   GENERAL OBJECTIVES

1.    The objectives of this Consent Decree are:

a.    To ensure that Burlingame uses, implements, and improves ways, means, and methods to prevent sanitary sewer overflows;

b.    To ensure that Burlingame continues to use, implement, and improve ways, means, and methods to prevent or reduce wastewater treatment plant violations; and

c.    To further the goals and objectives of the CWA.

## II.   DEFINITIONS

2.    Unless otherwise expressly defined herein, terms used in this Consent Decree, which are defined in the CWA or in regulations, or rules promulgated under the CWA, have the meaning assigned to them in the applicable statutes, regulations, or rules.  Whenever terms listed below are used in this Consent Decree, the following definitions apply:

a.    "Burlingame Collection System" means the sewer pipes and lines, manholes or maintenance holes, pump stations, and all appurtenances thereto under ownership of the City of Burlingame that are used to convey wastewater generated by residential, commercial, and industrial

sources to the Burlingame Waste Water Treatment Plant ("Burlingame WWTP").  For purposes of this Consent Decree, the Burlingame Collection System does not include lower laterals, private (upper) laterals or other privately owned or operated infrastructure that connects to the Burlingame Collection System.

b.      "Burlingame WWTP" means the treatment facility and all equipment, storage, and other infrastructure used by Burlingame to treat sanitary sewage located downstream of the headworks to such facility until the point at which it is discharged into the North Bayside System.

c.      "CCTV" means closed-circuit television.

d.      "CIP" means Burlingame's sanitary sewer system capital improvement program.

e.      "City" means the City of Burlingame, California.

f.      "day" means a calendar day. In computing any period of time under this Consent Decree, where the last day of such period is a Saturday, Sunday, or Federal or State Holiday, the period runs until the close of business on the next day that is not a Saturday, Sunday, or Federal or State Holiday.

g.      "Design Storm" means a 10-year return period rainstorm with a duration of 24 hours as measured by a properly calibrated and monitored rain gage, or such rain gages, within Burlingame or, if no such gage is available, at the San Francisco International Airport.  The engineering design criteria to be used by Burlingame for a 10-year 24-hour storm shall take into account short duration intense rainfall periods by reference to USDA Urban Hydrology for Small Watersheds guidance TR-55 (June 1986) and use of the synthetic rainfall distribution curve (Figure B-1 SCS 24-Hour Rainfall Distribution) found in Appendix B of TR-55.  Burlingame shall use the distribution curve for a Type IA storm as referenced on Figure B-1 of Appendix B of TR-55 based on local rainfall quantities for the Burlingame area in San Mateo County, California.

h.      "FOG" means fats, oil, and grease.

i.      "I/I" means Infiltration and Inflow.

j.      "Infiltration" means groundwater, rainwater, or other surface water that may enter the Burlingame Collection System through the pipe, joints, or cracks.

k.      "Inflow" means wastewater or water that may enter the Burlingame Collection System

1   through unpermitted connections, drains, or manholes.

2        l.     "Lower Lateral" means the lateral line connecting a home or other structure to the

3   City's sewer main extending from the sewer main to the back of the public right-of-way or City clean

4   out, whichever is applicable to the lateral connection.  Lower Laterals are generally connected to

5   Upper Laterals.

6        m.     "Lower Lateral Spill" or "Lower Lateral SSO" means an unintentional discharge,

7   release, or spill of sewage from a Lower Lateral within the City of Burlingame, and has the same

8   meaning as those terms are defined in Section A.1. of the Statewide General Waste Discharge

9   Requirements for Sanitary Sewer Systems, State Water Resources Control Board Order No. 2006-

10   0003, or any amendment thereto, and which currently means: "any overflow, spill, release, discharge

11   or diversion of untreated or partially treated wastewater from a sanitary sewer system.  SSOs include:

12   (i) Overflows or releases of untreated or partially treated wastewater that reach waters of the United

13   States; (ii) Overflows or releases of untreated or partially treated wastewater that do not reach waters

14   of the United States; and (iii) Wastewater backups into buildings and on private property that are

15   caused by blockages or flow conditions within the publicly owned portion of a sanitary sewer

16   system."  For purposes of this definition, "waters of the United States" has the meaning as set forth in

17   40 C.F.R. § 122.2.

18        n.     "MS4" means Burlingame's municipal separate storm sewer system.

19        o.     "MS4 Permit" means STOPP's NPDES permit No. CA0029912, Order No. R2-2003-

20   0022, as amended by Order No. R2-2003-0022.

21        p.     "Nearshore Outfall" means the outfall across the street from the Burlingame WWTP

22   through which the City has the physical ability to discharge effluent to San Francisco Bay.

23        q.     "NPDES" means National Pollutant Discharge Elimination System.

24        r.     "Sanitary Sewer Overflow," "overflow," or "SSO" has the same meaning as those

25   terms are defined in Section A.1. of the Statewide General Waste Discharge Requirements for

26   Sanitary Sewer Systems, State Water Resources Control Board Order No. 2006-0003 (hereinafter the

27   "SSO General WDR"), or any amendment thereto, and which currently means: "any overflow, spill,

28   release, discharge or diversion of untreated or partially treated wastewater from the Burlingame

1   Collection System.  SSOs include:  (i) Overflows or releases of untreated or partially treated

2   wastewater that reach waters of the United States; (ii) Overflows or releases of untreated or partially

3   treated wastewater that do not reach waters of the United States; and (iii) Wastewater backups into

4   buildings and on private property that are caused by blockages or flow conditions within the publicly

5   owned portion of a sanitary sewer system."  For purposes of this definition, "waters of the United

6   States" has the meaning as set forth in 40 C.F.R. § 122.2.

7        s.       "sewer line segment" means any section of publicly owned sewer line or pipe located

8   between: (1) two manholes/maintenance holes; (2) a pump station and a manhole/maintenance hole;

9   (3) a pump station or a manhole/maintenance hole and a headworks structure; or (4) a sewer line or

10  pipe otherwise identifiable as a discrete section.

11       t.       "Upper Lateral" means the private sanitary sewer lateral or line connecting a home or

12  other structure to the Lower Lateral, generally extending from the outside of the foundation of the

13  structure to the public right-of-way or the City's cleanout, whichever is applicable.

14       u.       "SSMP" means the Sewer System Management Program implemented by Burlingame

15  for the Burlingame Collection System to monitor the condition, maintenance, and repair of the

16  collection system.

17       v.       "STOPP" means San Mateo Countywide Stormwater Pollution Prevention Program.

18       w.       "2008 Permit" means NPDES Permit No. CA0037788, Order No. R2-2008-0008, as

19  presently constituted and/or as subsequently revised or renewed.

20       x.       "2002 Permit" means Burlingame's previous NPDES permit, Order No. R2-2002-

21  0027.

22                          **III.     JURISDICTION AND VENUE**

23       3.       For purposes of this Consent Decree, the Settling Parties stipulate that this Court has

24  jurisdiction over the subject matter of the claims asserted by Baykeeper pursuant to CWA § 505(a),

25  33 U.S.C. § 1365(a), and 28 U.S.C. §§ 1331, 1355, and 1367.  Venue is proper in this judicial district

26  pursuant to CWA §§ 309(b), 505(c), 33 U.S.C. §§ 1319(b), 1365(c), and 28 U.S.C. §§ 1391(b) and

27  (c).  The Settling Parties waive all objections that they may have to the District Court's jurisdiction to

28  enter and enforce this Consent Decree.

1

**IV.    EFFECT OF CONSENT DECREE**

2        4.    Baykeeper does not, by its consent to this Consent Decree, warrant or aver in any

3    manner that Burlingame's compliance with this Consent Decree will constitute or result in

4    compliance with any Federal or State law or regulation.  Nothing in this Consent Decree shall be

5    construed to affect or limit in any way the obligation of Burlingame to comply with all Federal, State

6    and local laws and regulations governing any activity required by this Consent Decree.

7        5.    Neither this Consent Decree, nor any payment pursuant to the Consent Decree, shall

8    constitute evidence or be construed as a finding, adjudication, or acknowledgement of any fact, law,

9    or liability, nor shall it be construed as an admission of violation of any law, rule, regulation, permit,

10   or administrative order by Burlingame.  However, this Consent Decree and/or any payment pursuant

11   to the Consent Decree may constitute evidence solely in actions by Baykeeper if seeking to enforce

12   compliance with this Consent Decree.  Except as otherwise provided in this agreement, Burlingame

13   maintains and reserves all defenses that it may have to any alleged violations that may be raised.

14

**V.    APPLICABILITY**

15       6.    This Consent Decree addresses all violations that were alleged and all known

16   violations that could have been alleged by Baykeeper in Civil Case No. 08- 0895 CW up to and

17   through the Effective Date of the Consent Decree.

18       7.    The Settling Parties certify that their undersigned representatives are fully authorized

19   to enter into this Consent Decree, to execute it on behalf of the Settling Parties, and to legally bind

20   the Settling Parties to its terms.

21       8.    The Settling Parties, including any successors or assigns, agree to be bound by this

22   Consent Decree and not to contest its validity in any subsequent proceeding to implement and enforce

23   its terms.

24

**VI.    EFFECTIVE DATE AND TERMINATION DATE**

25       9.    The term "Effective Date," as used in this Consent Decree, shall mean the date on

26   which the District Court enters the Consent Decree.

27       10.    This Consent Decree shall automatically terminate 10 years from the Effective Date,

28   unless either Baykeeper has invoked the Dispute Resolution Procedure set forth in Section XVIII

1  alleging violations of this Consent Decree by Burlingame and demanding an extension of the

2  Termination Date, or the Settling Parties have stipulated to an early termination or an extension of the

3  date for termination of this Consent Decree ("Termination Date"), and the District Court has

4  authorized the modification of the Termination Date.

5  ### VII.    NEARSHORE OUTFALL

6      11.     Burlingame shall construct and put into operation a retention basin at the Burlingame

7  WWTP of 1.15 million gallons, or larger if practical, by September 1, 2011.

8      12.     Burlingame shall minimize the use of the Near Shore Outfall and eliminate its use for

9  rainfall events of less than the Design Storm before the Termination Date of this Consent Decree

10  through construction of the retention basin, and the capital improvements in the Capacity Assurance

11  Report (Section XII) and the reductions of peak wet weather flows from the satellite systems as

12  addressed in Section XI.

13  ### VIII.   SSO AND SPILL REDUCTION PERFORMANCE GOALS

14      13.     SSO Reduction Goals.  It is the goal of this Consent Decree to reduce Burlingame's

15  Collection System SSOs to zero over time and to substantially reduce Lower Lateral Spills.  To

16  approach the goal of zero SSOs, Burlingame shall reduce its SSOs and Lower Lateral Spills as

17  follows:

18      a.     Burlingame Collection System SSO Reduction Performance Goals.

| Calendar Year | Maximum Number of SSOs Per 100 Miles of Sewer Line/Year |
|---|---|
| 2008 | 23 |
| 2009 | 23 |
| 2010 | 21 |
| 2011 | 19 |
| 2012 | 17 |
| 2013 | 15 |
| 2014 | 13 |
| 2015 | 11 |
| 2016 | 8 |
| 2017 | 5 |

b.      Lower Lateral SSO Reduction Performance Goals.

The City's goal is to reduce the annual number of Lower Lateral Spills.  The Lower Laterals SSO reduction goals are as follows:

| Year* | Maximum Annual # of Lower Lateral Spills |
|-------|------------------------------------------|
| 1     | 160                                      |
| 2     | 145                                      |
| 3     | 130                                      |
| 4     | 115                                      |
| 5     | 100                                      |
| 6     | 85                                       |
| 7     | 70                                       |
| 8     | 55                                       |
| 9     | 40                                       |
| 10    | 25                                       |

\* - Year 1 begins on the Effective Date and each new year commences on the respective anniversary of the Effective Date.

c.      For purposes of determining compliance with the Burlingame Collection System SSO and Lower Lateral Spill Reduction Performance Goals, SSOs and Spills caused by storm events exceeding the Design Storm shall not be counted.

d.      For purposes of determining compliance with the SSO and Spill Reduction Performance Goals, the Settling Parties assume Burlingame currently has approximately 100 miles of sewer line in its Collection System.

e.      Failure to meet the SSO Reduction Performance Goals and/or the Lower Lateral SSO Reduction Performance Goals shall be a violation of this Consent Decree to be resolved by the Dispute Resolution procedure in Section XVIII below.

f.      In order to reach the above SSO and Lower Lateral SSO goals, the City shall implement the programs described below.

**IX.      SSO REPORTING AND RESPONSE**

14.      Burlingame shall provide a copy of the Annual SSO Summary Reports that it submits to the Regional Board to Baykeeper during the life of the Consent Decree.  Such reports shall meet the

1  Regional Board requirements and shall be due to Baykeeper by March 31st of each calendar year.

2  Burlingame shall also compile and provide to Baykeeper an appendix to the Annual SSO Report that

3  will include the individual reports for each spill provided to the State Board as a part of the first 3

4  annual reports.  As these individual spill reports are to be  available for review on the State Board's

5  electronic reporting public access website, Burlingame may discontinue providing to Baykeeper the

6  appendix of the individual spill reports after the first 3 annual reports, unless Baykeeper makes a

7  request that Burlingame continue to provide such appendices.

8  Burlingame shall provide Baykeeper with a description of the capital improvements

9  completed in the Burlingame Collection Systems during the prior calendar year, and the total cost

10  associated with each capital expenditure.  In addition, Burlingame shall provide Baykeeper with a

11  summary of any changes to the total quantity of sewer line that will affect the calculation of

12  allowable SSO Performance Goals.  Such reports shall be due to Baykeeper by March 31st of each

13  calendar year.

## X.      SSO REDUCTION ACTION PLAN

15  15.     If any Annual SSO Summary Reports provided by Burlingame to Baykeeper

16  document compliance with the then-applicable SSO Reduction Performance Goals, the City shall

17  have no obligation to prepare a SSO Reduction Action Plan as set forth herein.  However, if an

18  Annual SSO Summary Report documents SSOs in excess of the SSO Reduction Performance Goals

19  of this Consent Decree, Burlingame shall submit to Baykeeper by June 1st of that same year a SSO

20  Reduction Action Plan that specifies the actions taken in the prior calendar year pursuant to the

21  Consent Decree and additional measures to be taken during the next calendar year and thereafter,

22  which are designed to achieve compliance with the SSO Reduction Performance Goals set forth in

23  this Consent Decree.  The SSO Reduction Action Plan shall include a proposed schedule for

24  implementation of all actions proposed.

25  16.     Baykeeper shall provide Burlingame, in writing, with all recommended revisions to

26  the SSO Reduction Action Plan within 45 days of receipt of such SSO Reduction Action Plan.

27  Burlingame shall consider each of Baykeeper's recommended revisions and indicate within 45 days

28  of receipt whether Burlingame accepts each such recommendation for revision.  If Burlingame does

1    not accept each of Baykeeper's recommendations, and remaining differences can not be informally

2    resolved promptly between the Settling Parties, then Baykeeper may seek Dispute Resolution

3    pursuant to Section XVIII.  In such Dispute Resolution Processes, Burlingame shall need to

4    demonstrate that the elements or actions set forth in the SSO Reduction Action Plan are designed to

5    achieve compliance with the SSO Performance Goals set forth in Section VIII, and, taken as a whole,

6    constitute good engineering and operational approach to achieving compliance.  To the extent the

7    Settling Parties do not dispute original provisions or recommended revisions, Burlingame shall

8    implement all undisputed provisions or revisions.  After the Settling Parties have reached agreement

9    on the SSO Reduction Action Plan or after Dispute Resolution resolves any dispute concerning the

10   SSO Reduction Action Plan, Burlingame shall begin implementation of the SSO Reduction Action

11   Plan as an enforceable requirement of this Consent Decree within 45 days of agreement or upon the

12   schedule set forth therein.

13         17.    Burlingame shall address in the SSO Reduction Action Plan the various elements of

14   such a plan that it believes will be necessary to achieve future compliance with the SSO Reduction

15   Performance Goals.  Burlingame may include any or all elements in the SSO Reduction Action Plan

16   in its SSMP Program.

17         18.    If additional funding is necessary to implement the SSO Reduction Action Plan

18   Burlingame shall seek such funding as soon as is practical.  If Burlingame seeks financing, but is

19   unsuccessful, Burlingame will disclose in the SSO Reduction Action Plan the extent of its efforts,

20   including any circumstances beyond its control which could not have been reasonably foreseen or

21   prevented by the exercise of due diligence.

22                         **XI.    SATELLITE SYSTEMS**

23         19.    The Town of Hillsborough operates a separate sanitary sewage collection system that

24   collects sewage from approximately 1,610 connections in San Mateo County.  The Town of

25   Hillsborough includes approximately 93.7 miles of sewage pipelines and related facilities, which are

26   connected to the Burlingame Collection System and Burlingame WWTP.

27         20.    The Burlingame Hills Sanitation District operates a separate sanitary sewer collection

28   system that collects sanitary sewage from approximately 450 connections in San Mateo County.

1   Burlingame Hills Sanitation District includes approximately 11 miles of sewage pipelines and the

2   sewage is conveyed to the Burlingame Collection System and thereafter conveyed to Burlingame's

3   WWTP for treatment and discharge.

4       21.    Baykeeper served the Town of Hillsborough and the Burlingame Hills Sanitation

5   District with a 60-Day Notice on June 5, 2008.  The 60-Day Notices in part allege collection system

6   deficiencies and Clean Water Act violations relating to system capacity issues, I/I and peak wet

7   weather flows.  The volume of flow from these two satellite agencies constitutes a significant

8   contribution to the wet weather flows of the Burlingame Collection System and substantially

9   contribute to capacity-related issues within the Burlingame Collection System and Burlingame

10   WWTP, including issues related to the use of the Near Shore Outfall.

11       22.    The City shall engage both the Town of Hillsborough and Burlingame Hills Sanitation

12   District in substantive discussions to attempt to obtain voluntary cooperation for coordination

13   between the agencies to reach sound engineering decisions on the most cost-effective means for

14   ensuring adequate capacity throughout the collection systems of Burlingame, Burlingame Hills

15   Sanitation District and the Town of Hillsborough.  These coordination efforts shall further address the

16   impact on Burlingame's WWTP and use of the Near Shore Outfall related to unabated wet weather

17   flows from the satellite agencies.  These coordination efforts shall include:

18       a.    coordination between the agencies on completing the condition and capacity

19   assessments in order to evaluate the entire integrated collection system including contributions to

20   peak wet weather flows;

21       b.    coordination between the agencies on reaching sound engineering decisions on the

22   most cost-effective means for ensuring adequate capacity throughout the three collection systems and

23   at the Burlingame WWTP;

24       c.    collaboration among the agencies to ensure the most cost-effective and efficient

25   delivery of the capital improvements needed; and

26       d.    collaboration between the agencies to develop new inter-agency agreements to address

27   these issues, develop financial plans and secure funding needed to complete an integrated capacity

28   assurance program.

## XII.   CAPACITY ASSURANCE

23.     Within 6 months of the Effective Date of the Consent Decree, Burlingame shall submit a work plan for hydraulic modeling of the Burlingame Collection System.  The hydraulic modeling shall be sufficient to identify all necessary capacity improvements to convey peak wet weather flows to the Burlingame WWTP without SSOs caused by insufficient capacity.  The work plan shall include a schedule for completion of the hydraulic modeling and submittal of a capacity assurance report ("Capacity Assurance Report").

24.     The work plan shall include all necessary rainfall and flow monitoring to calibrate and validate the model.  The work plan shall also include all smoke testing, dye testing and other measures necessary to identify sources of I/I.

25.     Within 3 years of the Effective Date of the Consent Decree, Burlingame shall provide a Capacity Assurance Report to Baykeeper identifying all necessary capacity improvements to convey peak wet weather flows to the Burlingame WWTP without SSOs caused by insufficient capacity.  The Capacity Assurance Report shall include a schedule for construction of all necessary capacity improvements identified in the Capacity Assurance Reports based on Design Storm criteria. The schedule for construction of capacity improvements shall be as expeditious as is practical and the City's goal shall be to complete construction of such improvements within 7 years from the date of the final Capacity Assurance Report.  In no event shall the completion of the construction of the improvements identified in the Capacity Assurance Report extend beyond the Termination Date, taking into account any modification of the Termination Date effected pursuant to the provisions of Section VI.

26.     The design standard for Burlingame improvements shall take into account anticipated reductions in storm related flows from the two satellite collection system agencies which direct a portion of their flow through the Burlingame WWTP for treatment, to wit: the Town of Hillsborough and the Burlingame Hills Sanitation District areas.  The Design Storm criteria for the City's capacity improvements shall anticipate reductions based on agreements negotiated between the City and the satellite agencies, the requirements imposed pursuant to consent decrees entered into by the satellite agencies with Baykeeper, or other court orders  or settlements with other legal entities or the

1    Regional Board.

2         27.    Inflow and Infiltration.  I/I identified within Burlingame's Collection System by the

3    hydraulic modeling and condition assessment programs set forth herein, shall be identified in the

4    Capacity Assurance Report and shall be addressed within the Capacity Assurance Report.  Major

5    sources of I/I shall be removed as expeditiously as practical.  The Capacity Assurance Report shall

6    include capacity improvements for the Burlingame Collection System designed to eliminate to the

7    greatest extent practical capacity-related SSOs during the rain events of less than the Design Storm.

8    Similarly, the Capacity Assurance Report shall include improvements designed to eliminate

9    discharges from the Near Shore Outfall during rain events of less than the Design Storm.  The result

10   of cost effective I/I removal, increase in sewer flow capacity and installation of a retention basin at

11   the WWTP shall be the elimination of capacity related SSOs and discharges from the Near Shore

12   Outfall in rainfall events less than the Design Storm.

13        28.    Final Compliance Report.  Burlingame shall provide to Baykeeper a final compliance

14   report for Baykeeper's review and comment.  The final compliance report shall be submitted to

15   Baykeeper a minimum of 1 year prior to the Termination Date and the report shall provide the status

16   of all of the construction and other related activities required in the Capacity Assurance Report.  The

17   report shall provide sufficient information and detail to reasonably demonstrate that Burlingame has

18   undertaken and will have completed sufficient activities to fully comply with the capacity related

19   SSOs and use of the Near Shore Outfall for rain events less than the Design Storm by the

20   Termination Date.  In the event Burlingame concludes that it cannot complete all of the efforts

21   required to eliminate capacity related SSOs and use of the Near Shore Outfall for rain events less than

22   Design Storm by the Termination Date, Burlingame shall request from Baykeeper an extension of the

23   Termination Date to a date which would allow sufficient opportunity for the City to complete the

24   necessary improvements.  Baykeeper shall not unreasonably withhold its approval to extend the

25   Termination Date in order to allow for the completion of the needed improvements, provided the City

26   makes a reasonable demonstration of prior good faith compliance efforts and a justification for

27   additional time to complete the needed capacity improvements.  This final compliance report and any

28   request for an extension of the Termination Date shall be subject to review, comment and referral to

1 the Dispute Resolution Procedures as set forth in Sections XII and XVIII.

2      29.      Review of Submittals.  Baykeeper shall have the right to review the work plan for

3 hydraulic modeling and provide comments thereon.  Baykeeper shall have 60 days to review and

4 comment on the work plan for hydraulic modeling, but shall use its best efforts to provide comments

5 promptly upon receipt.  Burlingame shall consider in good faith Baykeeper's comments and attempt

6 to incorporate them into the work plan for the hydraulic modeling.  The Settling Parties realize that

7 professional judgments may differ and therefore Baykeeper shall not have an absolute right to

8 demand modifications to address each of its concerns in the manner it prefers and Burlingame

9 understands that it must work in good faith with Baykeeper to develop a hydraulic modeling work

10 plan which is sufficient in approach and scope to ultimately satisfy both Settling Parties.

11      30.      Baykeeper shall have 60 days to review and comment on the Capacity Assurance

12 Report.  Similarly, Burlingame shall consider in good faith and attempt to address Baykeeper's

13 comments.

14      31.      Neither Settling Party shall invoke Dispute Resolution until both Parties have made

15 good faith efforts to resolve any professional differences with regard to the hydraulic work plan and

16 the Capacity Assurance Report.

17      **XIII.   SEWER CONDITION ASSESSMENT/REHABILITATION/REPLACEMENT**

18      32.      Within 4 years of the Effective Date of the Consent Decree, Burlingame shall

19 complete CCTV inspection and condition assessment of all sewer line segments in the Burlingame

20 Collection System which are older than 10 years.  Burlingame shall inspect and assess no less than 25

21 miles of sewer in each of the first 3 years of the term of this Consent Decree.

22      33.      The 4th year shall be used to complete repairs as needed to allow the inspection of

23 gravity lines where passage of the CCTV camera was blocked by the condition of the pipe.  Within 6

24 months of the Effective Date of the Consent Decree, Burlingame shall propose to Baykeeper a

25 schedule for CCTV inspections.

26      34.      The inspection will be accomplished using CCTV.  The defects will be coded using

27 the Pipeline Assessment and Certification Program ("PACP") standard.  The work products will

28 include an inspection database, prioritized repair projects, and prioritized rehabilitation/ replacement

projects.  The annual inspection quantity will include the sum of the lengths of all of the gravity sewers where inspection was completed.  The inspection work will be completed using the City's CCTV crew and/or contract CCTV service.

The City is committed to correcting defects that may cause an SSO within an appropriate timeframe.  The City's timeframes for actions to correct observed defects are shown on the table below.

**Timeframe for Actions to Correct Observed Defects**

| Observed Defect | Corrective Action | Time Frame (from date defect observed) |
|---|---|---|
| PACP Grade 4 or 5 Maintenance Defect | Clean sewer | 60 days |
| PACP Grade 3 Maintenance Defect | Clean sewer | 4 months |
| PACP Grade 5 Structural Defect – Immediate Failure Likely | Repair or Rehabilitate Sewer | ASAP |
| PACP Grade 5 Structural Defect – Immediate Failure Unlikely | Repair, Rehabilitate, or Re-inspect Sewer | 2 years |
| PACP Grade 4 Structural Defect | Repair, Rehabilitate, or Re-inspect Sewer | 5 years |

35.     The schedule proposed in paragraph 34, above, shall be prioritized to first inspect the easement sewers, sewers in areas with known SSO problems, and sewers with known or suspected structural deficiencies.

**XIV.   IMPLEMENTATION OF FATS, OILS AND GREASE (FOG) PROGRAM**

36.     The City shall continue to implement the FOG Control Program as outlined in Section VII:  (FOG Control Program) of the City's SSMP.  This program shall include the revisions set forth to subdivision D FOG Source Control Program as modified in 2008.  The Settling Parties agree that these programs are primarily aimed at the commercial sector and further agree that these programs if carried out as outlined should be considered to be effective in preventing SSOs in sewers downstream of commercial FOG sources.  However, the City has experienced an increase in FOG related SSOs between 2005 and 2007.  The additional SSOs are located primarily within residential areas.  The City has an outreach and public education program and the Settling Parties believe that the most effective way to minimize FOG related SSOs in residential areas is through the Hot Spots Preventive Maintenance Program.  The Hot Spots Program as outlined below shall increase its focus on

residential FOG related SSOs in order to minimize residential FOG related SSOs.

### XV.   SEWER CLEANING, HOT SPOTS, AND LOWER LATERAL PROGRAMS

37.   Sewer Cleaning.  Routine Cleaning - Burlingame shall continue to clean all sewers in the Collection System at a minimum of once every 3 years.

38.   Hot Spots Program. Burlingame shall maintain and improve its hot spot (preventive maintenance) cleaning program.  The City shall implement, or continue to use the cleaning and evaluation methodology set forth below entitled Preventive Maintenance scheduling/scheduling flow chart.



b.   The City shall collect observations from its sewer cleaning crews regarding the extent and nature of materials removed during the cleaning process.  It shall be recorded in the CMMS  and the City shall follow the action matrix based on cleaning results which is included below:

Standard Sewer Cleaning Results

| | Clear | Light | Moderate | Heavy |
|---|---|---|---|---|
| **Debris** | Code: **CL**<br>No observable debris | Code: **DL**<br>Minor amount of debris<br>15 minutes or less to clean<br>1 pass | Code: **DM**<br>Less than 5 gallons of debris per line segment<br>15-30 minutes to clean<br>2-3 passes | Code: **DH**<br>More than 5 gallons of debris per line segment<br>More than 30 minutes to clean<br>More than 4 passes<br>Operator concern for future stoppage |
| **Grease** | Code: **CL**<br>No observable grease | Code: **GL**<br>Minor amounts of grease<br>15 minutes or less to clean<br>1 pass | Code: **GM**<br>Small "chunks"<br>No "logs"<br>15-30 minutes to clean<br>2-3 passes | Code: **GH**<br>Big "chunks" or "logs"<br>More than 30 minutes to clean<br>More than 4 passes<br>Operator concern for future stoppage |
| **Roots** | Code: **CL**<br>No observable roots | Code: **RL**<br>Minor amounts of roots<br>15 minutes or less to clean<br>1 pass | Code: **RM**<br>Thin stringy roots<br>No "clumps"<br>15-30 minutes to clean<br>2-3 passes | Code: **RH**<br>Thick roots<br>Large "clumps"<br>More than 30 minutes to clean<br>More than 4 passes<br>Operator concern for future stoppage |
| **Other:**<br>Pipe wall fragments Soil/dirt/rock | Code: **CL**<br>No observable materials | Code: **OL**<br>Specify material (if possible)<br>Minor amounts of material | Code: **OM**<br>Specify material<br>Less than 5 gallons of material per line segment | Code: **OH**<br>Specify material<br>More than 5 gallons of material per line segment<br>Operator concern for future stoppage |
| **Action** | Decrease frequency to next lower frequency after 3 consecutive CL results (e.g. 6 months to 12 months) | Continue current maintenance frequency | Increase current maintenance frequency to next higher frequency (e.g. 6 months to 3 months) | Increase current maintenance frequency to next higher frequency (e.g. 3 months to 3 months) |

c.      Changes in cleaning frequency based upon cleaning results shall be as follows: no reduction in cleaning frequency shall be made in a segment with previous history of SSOs without the approval of an appropriate collection system maintenance supervisor; three consecutive results of "clear" will result in the cleaning frequency being reduced to the next lower cleaning frequency; results of "medium" or "heavy" will result in the cleaning frequency being increased to the next highest frequency.

d.      Burlingame shall institute and maintain a quality assurance/quality control program adequate to ensure proper and complete cleaning of sewers.

e.      If scheduled or hot spot cleaning of a segment or area cannot be properly accomplished due to pipe condition or access limitations, the City shall move to remedy the condition immediately or within a maximum of 2 years depending on the Standard Sewer Cleaning Results matrix above and prior cleaning history.

39.      Lower Lateral Program.

a.      The City contends that Lower Laterals are legally the responsibility of the property owner served by the lateral and that widespread industry practice is to require Lower Laterals be maintained by the property owner.  Nonetheless, the City acknowledges that there have been numerous spills from the Lower Laterals within the City and the City will make certain efforts to address this issue through a Lower Lateral operation and maintenance program without regard to the ultimate legal responsibility for their maintenance or spills therefrom.

b.      The City will respond to, restore flow, and mitigate the impacts of all Lower Lateral Spills.  Lower Laterals where the spill was larger than 5 gallons will be placed in the preventive maintenance program within 30 days of the spill event.  The Lower Lateral preventive maintenance program will consist of cleaning at a 6 or 12 month frequency depending on the cause of the spill. Each Lower Lateral where the spill was larger than 5 gallons will be inspected using CCTV to determine the primary cause of the spill.  The modes of corrective action that the City will employ include: repair/rehabilitation/ replacement, education of the property owner or resident, or periodical application of root control chemicals.  For Lower Lateral Spills where the primary cause is pipe failure, the Lower Lateral will be repaired, rehabilitated, or replaced within 2 years of the date of the spill by the City of Burlingame.  With the exception of Lower Laterals where root intrusion was the primary cause of the spill, a Lower Lateral will be removed from the preventive maintenance schedule when the corrective action is complete.  The sequence of actions that the City will take in response to a Lower Lateral Spill is shown below.

///

c.    Lower Lateral Spill Response Flowchart.



1

2

### XVI.   OVERSIGHT COSTS FOR BAYKEEPER'S MONITORING OF CONSENT DECREE COMPLIANCE

3

4   40.   To compensate Baykeeper for all time spent by legal staff and technical consultants

5   reviewing compliance reports and all other documents, and participating in any meet and confer

6   process under this Consent Decree, Burlingame shall pay Baykeeper the sum not to exceed $50,000

7   to be paid at $5,000 per year.  The first payment shall be due within 10 days from the Effective Date

8   of this Consent Decree and made payable to "Lawyers for Clean Water Attorney-Client Trust

9   Account" and addressed to: 1004 O'Reilly Avenue, San Francisco, CA 94129, sent overnight

10   delivery.  Additional $5,000 payments per annum shall be made in the same manner on March 31st of

11   each of the following years until the total sum of $50,000 has been paid or the Consent Decree is

12   terminated.  This $50,000.00 amount is a cap for all legal fees, consultant fees and other costs in

13   Baykeeper's oversight and monitoring of this Consent Decree, solely excepting any such attorneys

14   fees or costs that may be available to a party as provided for in the Formal Dispute Resolution in

15   paragraph 45 below.

16   41.   Supplemental Environmental Project.  To remediate perceived environmental past

17   harms resulting from the alleged effluent limit violations, receiving water limitations, and WWTP

18   spills/overflows, Burlingame shall pay to the Rose Foundation for Communities and the Environment

19   ("the Rose Foundation") the total sum of $250,000 ("the SEP Payment") paid in two installments and

20   to be used to fund supplemental environmental project activities that will benefit the San Francisco

21   Bay-Delta watershed.  The Settling Parties further agree that the Rose Foundation shall in good faith

22   give preference to projects designed to benefit the watershed in San Mateo County for at least a

23   portion of the mitigation funding.

24   Within 10 days of the Effective Date of this Consent Decree, payment in the amount of

25   $125,000 shall be made payable to "The Rose Foundation for Communities and the Environment".  A

26   second payment in the amount of $125,000 shall be made on or before July 10, 2009.

27   The Rose Foundation for Communities and the Environment
28   6008 College Avenue, Suite 10
     Oakland, California 94618
     Attention: Tim Little

42.     Plaintiff will take reasonable steps to ensure Burlingame receives an annual accounting from the Rose Foundation specifying how the Rose Foundation dispersed any of the SEP Payment.  Such accounting shall indicate the recipient organization(s) of the SEP Payment and describe the projects funded.

43.     In any case, the Baykeeper shall not receive any of the SEP Payment to use for any purpose.

## XVII.  COMMITMENTS OF BAYKEEPER

44.     Submission Of Consent Decree To Federal Agencies.  Baykeeper shall submit this Consent Decree to EPA and DOJ within 3 days of filing this Consent Decree with the District Court for agency review consistent with 40 C.F.R. § 135.5.  The agency review period expires 45 days after receipt by both agencies, as evidenced by the certified return receipts, copies of which shall be provided to Burlingame upon receipt by Baykeeper.  In the event that EPA or DOJ comment negatively on the provisions of this Consent Decree, the Settling Parties agree to meet and confer to attempt to resolve the issue(s) raised by EPA or DOJ.

## XVIII. BREACH OF CONSENT DECREE AND DISPUTE RESOLUTION PROCEDURES

45.     Force Majeure.  Burlingame shall notify Baykeeper pursuant to the terms of this paragraph, when implementation of the requirements set forth in this Consent Decree, within the deadlines set forth in those paragraphs, becomes impossible, despite the timely good-faith efforts of Burlingame, due to circumstances beyond the control of Burlingame or its agents, and which could not have been reasonably foreseen and prevented by the exercise of due diligence by Burlingame. Any delays due to Burlingame's failure to make timely and bona fide applications and to exercise diligent efforts to obtain permits in normal inclement weather shall not, in any event, be considered to be circumstances beyond  Burlingame's control.  Failure of the Town of Hillsborough or Burlingame Hills Sanitation District to meet their separate obligations to Baykeeper, if obtained by Baykeeper, or to meaningfully reduce their peak flows pursuant to Section XI of this Consent Decree, may reasonably be a force majeure event, including the obligations of Burlingame to meet the Design Storm standards for SSOs, Lower Lateral Spills and use of the Near Shore Outfall through implementation of the capacity assurance program, provided Burlingame has met its obligations

1   under the capacity assurance program.

2        a.     If Burlingame claims impossibility, it shall notify Baykeeper in writing within 21 days

3   of the date that Burlingame first knew of the event or circumstance that caused or would cause a

4   violation of this Consent Decree, or the date Burlingame should have known of the event or

5   circumstance by the exercise of due diligence.  The notice shall describe the reason for the

6   nonperformance and specifically refer to this Section of this Consent Decree.  It shall describe the

7   anticipated length of time the delay may persist, the cause or causes of the delay, the measures taken

8   or to be taken by Burlingame to prevent or minimize the delay, the schedule by which the measures

9   will be implemented, and the anticipated date of compliance.  Burlingame shall adopt all reasonable

10  measures to avoid and minimize such delays.

11       b.     The Settling Parties shall meet and confer in good-faith concerning the non-

12  performance and, where the Settling Parties concur that performance was or is impossible, despite the

13  timely good faith efforts of Burlingame, due to circumstances beyond the control of Burlingame that

14  could not have been reasonably foreseen and prevented by the exercise of due diligence by

15  Burlingame, new performance deadlines shall be established.

16       c.     If Baykeeper disagrees with Burlingame's notice, or in the event that the Settling

17  Parties cannot timely agree on the terms of new performance deadlines or requirements, either

18  Settling Party shall have the right to invoke the Dispute Resolution process pursuant to Section

19  XVIII.  In such proceeding, Burlingame shall bear the burden of proving that any delay in

20  performance of any requirement of this Consent Decree was caused or will be caused by force

21  majeure and the extent of any delay attributable to such circumstances.

22       46.     Informal Dispute Resolution.  The Dispute Resolution procedure set forth in

23  paragraphs a and b below and in paragraph 47 shall be the exclusive mechanism for resolving

24  disputes between the Settling Parties with regard to any aspect of this Consent Decree.  The Settling

25  Parties agree to engage in Informal Dispute Resolution pursuant to the terms of this paragraph:

26       a.     If a dispute under this Consent Decree arises, or any Settling Party believes that a

27  breach of this Consent Decree has occurred, the Settling Parties shall meet and confer (telephonically

28  or in-person) within 15 days of receiving written notification of a request for such meeting.  During

1   the meet and confer proceeding, the Settling Parties shall discuss the dispute and make best efforts to

2   devise a mutually acceptable plan, including implementation dates, to resolve the dispute.  The

3   Settling Parties may, upon mutual written agreement, extend the time to conduct the meet and confer

4   discussions beyond 15 days.  If the dispute is resolved through this Informal Dispute resolution

5   process, neither Settling Party shall be entitled to attorney's fees or costs.

6         b.    If any Settling Party fails to meet and confer within the timeframes set forth in

7   paragraph 46.a, or the meet and confer does not resolve the dispute, after at least 10 days have passed

8   after the meet and confer occurred or should have occurred, either Settling Party shall be entitled to

9   initiate the Formal Dispute Resolution procedures outlined in paragraph 47 below.

10        47.    Formal Dispute Resolution.  The Settling Parties agree that any action or proceeding

11  which is brought by any Settling Party against any other Settling Party pertaining to, arising out of or

12  related to the requirements of this Consent Decree shall first utilize the Informal Dispute Resolution

13  meet and confer proceedings set forth in the preceding paragraph and, if not successful, the Settling

14  Parties shall utilize the Formal Dispute Resolution procedures in this paragraph.  The Settling Parties

15  agree that Formal Dispute Resolution shall be initiated by filing a Motion to Show Cause or other

16  appropriately titled motion ("Motion") in District Court, before Judge Wilken, to determine whether

17  either party is in breach of this Consent Decree and, if so, to require the breaching party to remedy

18  any breach identified by the District Court within a reasonable time frame.  The party filing any such

19  Motion may request expedited review of the Motion.  If Judge Wilken is not available to perform the

20  role identified herein, the Settling Parties agree that the Motion shall be re-assigned pursuant to

21  applicable rules of the District Court.  The prevailing or substantially prevailing party in the Formal

22  Dispute Resolution proceeding shall receive its reasonable costs and attorney's fees incurred in

23  accord with the standard established by § 505 of the Clean Water Act, 33 U.S.C. § 1365.

24                    **XIX.    STIPULATED PENALTIES**

25        48.    Reports covered by this Section include: the Annual SSO Summary Report under

26  Section IX; the SSO Reduction Action Plan under Section X; the hydraulic modeling work plan

27  under Section XII; the Capacity Assurance Report under Section XII; and the Condition Assessment

28  referenced in paragraph 32.  Burlingame shall have a 14 day grace period after the due date for the

1    reports covered by this Section prior to imposition of stipulated penalties for the first instance of

2    delayed reporting.  Baykeeper is not obligated to notify Burlingame after any submission date has

3    been missed, however it may do so in order to allow Burlingame to promptly address any alleged

4    deficiency.

5         49.    Burlingame shall pay the following stipulated payments in the event that it files a late

6    report covered herein after the grace period:

7         a.    For a report submitted after the grace period, Burlingame shall pay $100 per day until

8    the report is filed, up to 30 days for a total amount of $3,000.

9         b.    For any report more than 30 days late, Burlingame shall pay $5,000.

10        c.    For any report more than 90 days late, Burlingame shall pay $10,000.

11        d.    The above penalties are cumulative, as applicable, to a maximum penalty of $18,000

12    per report.

13        50.    Baykeeper will notify Burlingame if Baykeeper believes that Burlingame failed to

14    meet any requirement of its SSO Reduction Action Plan.  Burlingame will have 30 days after receipt

15    of Baykeeper's written notification to cure any such failure, or to the extent such failure can not be

16    cured within that time frame, to begin substantial efforts to cure within the shortest possible time

17    frame.  Burlingame will notify Baykeeper in writing of actions taken to cure.  If Burlingame does not

18    cure the alleged failure, as applicable, within 30 days after Baykeeper's notice under this paragraph,

19    Burlingame shall accrue a $5,000 penalty on the 31st day, and $15,000 penalty on the 91st day.

20    Burlingame may request a meet and confer or other proceedings set forth in Section XVIII in relation

21    to any alleged failure to cure, or to begin substantial efforts to cure, the alleged failure; any alleged

22    failure to meet any requirement of its SSO Reduction Action Plan or the accrual of these penalties.

23        51.    In the case of a late report, Burlingame shall send Baykeeper the report per Section IX.

24    Baykeeper shall notify Burlingame of receipt of the late report or failure to ultimately meet any

25    requirement of the SSO Reduction Action Plan after the process in Section X is concluded, and shall

26    include an invoice for the amount of the stipulated penalty, if any, due and payable.  Burlingame shall

27    contact Baykeeper within 5 days if Burlingame disagrees with Baykeeper's stipulated penalty

28    calculation and may meet and confer with Baykeeper or seek Dispute Resolution pursuant to Section

1  XVIII.  Burlingame shall pay any stipulated payments due pursuant to this Consent Decree within 30

2  days after receipt of  Baykeeper's invoice itemizing the stipulated payment liability.

3       52.     All payments of stipulated penalties described above shall be paid by Burlingame via

4  overnight mail to: Rose Foundation 6008 College Avenue, Oakland, CA 94618, Attn: Tim Little.

5  Nothing in this Consent Decree shall prevent Baykeeper from waiving any stipulated penalties which

6  might be due under this Section XIX, based on the outcome of the Informal Dispute Resolution

7  process or based on Burlingame's good faith efforts.

8                 **XX.      FEES, COSTS AND EXPENSES**

9       53.     To help defray Baykeeper's attorneys, consultant, and expert fees and costs, and any

10 other costs incurred as a result of investigating, filing this action, and negotiating a settlement,

11 Burlingame shall pay Plaintiff the sum of $175,000 which shall include all attorneys' fees and costs

12 for all services performed by and on behalf of Baykeeper by its attorneys and consultants up to and

13 through the Effective Date of this Consent Decree.  The payment shall be made within 10 days of the

14 Effective Date of this Consent Decree.  The payment shall be made in the form of a check payable to

15 "Lawyers for Clean Water Attorney Client Trust Account" addressed to:  1004 O'Reilly Avenue, San

16 Francisco, CA 94129, sent overnight delivery, and shall constitute full payment for all costs of

17 litigation incurred by Baykeeper that have or could have been claimed in connection with or arising

18 out of Baykeeper's lawsuit, up to and including the Effective Date.

19                **XXI.   NOTICES AND SUBMISSIONS**

20      54.     Burlingame agrees to provide Plaintiff with all documents or reports required by this

21 Consent Decree.  All documents shall be directed to the following individuals at the addresses

22 specified below unless specifically stated otherwise herein.  Any change in the individuals or

23 addresses designated by any party must be made in writing to all Settling Parties.

24                <u>If to Baykeeper</u>:

25

26                Daniel Cooper
               LAWYERS FOR CLEAN WATER, INC.
               1004 O'Reilly Avenue

27                San Francisco, California 94129
               Telephone: (415) 440-6520

28                Email: cleanwater@sfo.com

Brian Gaffney
LAW OFFICES OF BRIAN GAFFNEY
605 Market Street, Suite 505
San Francisco, California 94105
Telephone: (415) 442-0711
Facsimile: (415) 442-0713

Amy Chastain
SAN FRANCISCO BAYKEEPER
785 Market Street, Suite 850
San Francisco, CA 94103
Telephone: (415) 856-0444 x 106
Email: amy@baykeeper.org

If to Burlingame:

Kenton Alm
MEYERS NAVE RIBACK SILVER & WILSON
555 12th Street, Suite 1500
Oakland, California 94607
Telephone: (510) 808-2000
Email: kalm@meyersnave.com

Syed Murtuza, Director of Public Works
City of Burlingame
501 Primrose Road
Burlingame, California 94010
Telephone:  (650) 558-7230
Email: smurtuza@burlingame.org

55.     Burlingame also agrees to make available to Baykeeper any documents reasonably necessary to evaluate system performance and/or compliance with this Consent Decree within 30 days of written request by Baykeeper.

56.     During the life of this Consent Decree, Burlingame shall preserve at least one legible copy of all records and documents, including computer-stored information, which relate to performance of its obligations under this Consent Decree.

57.     Any notice, report, certification, data presentation or other document submitted by Burlingame to Baykeeper pursuant to this Consent Decree, which discusses, describes, demonstrates, or supports any finding or makes any representation concerning compliance or non-compliance with any requirement(s) of this Consent Decree, shall contain the following certification, signed and dated

by a responsible official:

> I certify, under penalty of perjury, that this document and all attachments were prepared under my direction or supervision in accordance with a system designed to assure that qualified personnel properly gather and evaluate the information submitted and is, to the best of my knowledge and belief, true, accurate and complete.

## XXII.  MUTUAL RELEASE OF LIABILITY

58.     Upon District Court approval and entry of this Consent Decree, Baykeeper and its successors, assigns, directors, officers, agents, attorneys, representatives, and employees, releases all persons, including the City and its officers, directors, employees, shareholders, agents, attorneys, representatives, contractors (including Veolia), predecessors, successors and assigns, past and present, from, and waives all claims, for injunctive relief, damages, penalties, fines, sanctions, mitigation, fees (including fees of attorneys, experts, and others), costs, expenses or any other sum incurred or claimed in this action, or which was alleged in the Notice Letters, including but not limited to the alleged failure of the City or Veolia to comply with the Clean Water Act (33 U.S.C. § 1251, et seq.) and the Porter-Cologne Water Quality Control Act (Water Code, § 13000, et seq.) (hereinafter "Claims"), up to the Termination Date of this Consent Decree.  This release includes a release, and covenant not to sue, for any claims of injunctive relief, damage, penalties, fines, sanctions, mitigation, fees (including fees of attorneys, experts and others), costs, expenses or any other sum incurred or claimed or which could have been claimed with respect to any activities in alleged violation of, or claims arising under, the Clean Water Act or the Porter-Cologne Water Quality Control Act, that may arise during the term of this Consent Decree up to the Termination Date.  The Settling Parties further expressly waive any rights or benefits available to them under the provisions of California Civil Code § 1542 as related to any potential Clean Water Act or Porter-Cologne Water Quality Act violations or claims through the Termination Date of this Consent Decree, which Section provides as follows:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor.

59.     Nothing in this Consent Decree limits or otherwise affects Baykeeper's right to address or take any position that it deems necessary or appropriate in any formal or informal proceeding before the Regional Board, EPA, or any other judicial or administrative body on any other matter relating to Burlingame.

## XXIII. GENERAL PROVISIONS

60.     Continuing Jurisdiction.  The District Court shall retain jurisdiction to enforce the terms and conditions of this Consent Decree and to resolve disputes arising hereunder as may be necessary or appropriate for the construction or execution of this Consent Decree up to and including the Termination Date.

61.     Construction.  The language in all parts of this Consent Decree shall be construed according to its plain and ordinary meaning, except as to those terms defined in the 2008 Permit, the 2002 Permit, Burlingame's MS4 Permit, the SSO General WDR, the Clean Water Act, or as specified herein.

62.     Choice Of Law.  The laws of the United States shall govern this Consent Decree.

63.     Severability.  In the event that any provision, paragraph, section, or sentence of this Consent Decree is held by a Court to be unenforceable, the validity of the enforceable provisions shall not be adversely affected.

64.     Counterparts.  This Consent Decree may be executed in any number of counterparts, all of which together shall constitute one original document.  Telecopy and/or facsimile copies of original signature shall be deemed to be originally executed counterparts of this Consent Decree.

65.     Modification Of The Consent Decree.  This Consent Decree, and any provisions herein, may not be changed, waived, discharged, or terminated unless by a written instrument, signed by the Settling Parties.

66.     Full Settlement.  This Consent Decree constitutes a full and final settlement of this matter.

67.     Integration Clause.  This is an integrated Consent Decree.  This Consent Decree is intended to be a full and complete statement of the terms of the agreement between the Settling Parties and expressly supersedes any and all prior oral or written agreements covenants,

1  representations and warranties (express or implied) concerning the subject matter of this Consent

2  Decree.

3       68.    Authority. The undersigned representatives for Baykeeper and Burlingame each

4  certify that he/she is fully authorized by the Settling Party whom he/she represents to enter into the

5  terms and conditions of this Consent Decree.

6       The Settling Parties hereby enter into this Consent Decree.

7                                           CITY OF BURLINGAME

8  Date: _____

9                                         By: James Nantell, City Manager

10                                       ATTEST:

11

12                                       Doris Mortensen, City Clerk

13

14                                       SAN FRANCISCO BAYKEEPER

15  Date: _____

16                                       By: Sejal Choksi

17  **APPROVED AS TO FORM:**          For **DEFENDANT CITY OF BURLINGAME**:

18                                       MEYERS NAVE RIBACK SILVER & WILSON

19  Date: _____

20                                       By: Kenton Alm

21                                       For **PLAINTIFF**:

22                                       LAWYERS FOR CLEAN WATER INC.

23  Date: _____

24                                       By: Daniel Cooper

25                                       LAW OFFICES OF BRIAN GAFFNEY

26  Date: _____

27                                       By: Brian Gaffney

28       IT IS HEREBY ORDERED that the above captioned action against all parties is dismissed

with prejudice.

IT IS FURTHER ORDERED that the Court shall retain jurisdiction over Baykeeper's claims against Burlingame for the sole purpose of enforcing compliance by the Settling Parties with the terms of the Consent Decree;

IT IS SO ORDERED.

Date: 10/6/08 _____

NORTHERN DISTRICT OF CALIFORNIA

_____
Honorable Claudia Wilken
United States District Court
Northern District of California

1134500.5